Tilghman C. J.
(After stating the case.) Six exceptions have been taken to the charge of the Court, which shall be considered in the order they were brought forward.
Exception 1. “ That the Court instructed the jury that “ the lines of an adjoining survey will not make a sufficient “survey for the defendant: but left it to the jury to decide “ whether a survey was actually made or not, when all the “ evidence was in favour of the survey, and none against it.” As to leaving it to the jury, it was no more than what the Court were bound, to do, and it is impossible for us to sav, nor have we any-right to say, what was the strength of the evidence on one side or the other. All that we have to inquire is, whether the. Court misdirected the jury, in point of *397 law. If, in summing up the evidence, they made any mistake in point of fact, it is what we have nothing to do with." In such case, the best remedy is for the party who thinks himself aggrieved, to mention the mistake to the Judge, and request him to correct it before the jury retire. Or, it may, if omitted then, be brought forward as a reason for anew trial. This is a matter which I wish all gentlemen of the bar would attend to;- because much time is wasted in this Court by endeavours to shew that the plaintiffs in error have been injured by remarks on the evidence made by the Judge who delivered the charge. If the Judge had, in the present instance, told the jury that the defendant’s survey was bad, because the surveyor had given reference to some of the lines of older surveys, without actually running and marking these lines over, it would have been error. This very point having been decided by this Court, in M'-Rhea v. Plumer,' 1 Binn. 227. But he told them no such thing: he left it to the jury to decide, on the whole, whether an actual survey had been made, and it was not pretended that the defendant’s land was surrounded, on all sides, by the lines of older surveys. But it is said that the Judge ought to have directed the jury to consider the return of survey as prima facie evidence of an actual survey. It undoubtedly is prima facie, and very strong evidence, especially in the .case of ancient surveys. But we are not to reverse a judgment for error, because the Judge has not made all the remarks which the nature of the case admits of. It is always in the power of the counsel to draw the attention of the Court to any point which they think material, and ask an opinion on it: and if an opinion is not given, it is error. In this case, however, I cannot help saying, that the presumption in favour of the survey is not so strong as if the return had been made by William Scull himself, in some reasonable time. The certificate of Henry Donnel, unaccompanied by any draft or writing of Scull, is open to many observations not necessary to be now made. Upon the whole, I do not think there is error in the matter of the first exception.
Exception 2. The Court instructed the jury “ that oia an “ application for land, reasonably descriptive, title commences “ from the making of the survey.” If the application describes, with sufficient certainty, the land on which the survey is laid, so that it could not, with propriety, be .laid in *398 any other place, the title will commence from the date of the ‘application, provided due diligence be used in obtaining a survey. Whether the defendant’s title, however, commences on the date of his application, or of his survey, is immaterial, as both are prior to the plaintiff’s warrant. But when the Court said that the defendant’s application was reasonably descriptive of the land in dispute, the opinion was fully as favourable to him as the case admitted. For the application is loose; and though it cannot be said to be inapplicable to the land in dispute, it might apply equally well to other places. It calls for “ the south side of Muncy hill, including “ the heads of Delaxvare run.” There is nothing precise in the south side of Muncy hill: and as it appears that Delaware run is formed by the union of several streams issuing from Muncy hill, it is evident that the description did not point exclusively to one spot. On such an application, according to the opinion of the Court, in Lawman's lessee v. Thomas, (4 Binn. 51.) the title would date from the making of the survey, unless there should be such subsequent misconduct on the part of the applicant as would forfeit his preference. What would amount to such misconduct I will not now consider, but it must be his oxvn misconduct: for he could not be injured by the misconduct of the deputy surveyor. The defendant, however, cannot complain of the charge of the Court, on this point, because his title would-, agreea-' bly to the charge, commence on the making of his survey, provided the jury thought he had proved a survey: and this would prevent the plaintiff’s recovery.
Exception 3. The Court charged the jury, “thata title by “ application and survey, might be abandoned.” Nothing-can be clearer than the truth of this proposition. On an application and survey, no purchase money was paid, and it might very well happen that, after the survey, it might be evident that the land was taken by some prior right. No doubt this has often happened. Many abandonments have, been made in such cases, nor can any reason be assigned against them. Whether, in the present instance, there was any abandonment, was one of those mixed cases, composed of law and fact, that might, without impropriety, be submitted to the jury. There are cases where the facts are so clear and so strong that the Court may pronounce the law on them. But the usual course has been to submit matter of abandonment to the jury.
*399 Exception 4. The Court instructed the jury, “ that from ?‘ the conduct of Little, as commissioner of Northumberland “ county, in advertising this land, and selling it as the pro- “ perty of Paschal, a strong implication arose, that he did “ not then claim it under his own application and survey.” This is no more than a remark on the weight of evidence. No principle of law is laid down, and therefore there can be no error in law.
Exception 5. The Court instructed the jury, “ that a purchaser at the commissioners’ sale, who should have paid “ his money, and received a deed of conveyance from the “ commissioners, of whom Little was one, would hold the “ land against Little.” There is no error in .this. But it was a fictitious case; not applicable to the case before the Court. For the purchaser of Paschal’s land, neither paid money nor received a deed. The contract was not completed: for what reason we are üninformed.
Exception 6. “ The Court imputed fraud to John Little, “ which, if it existed, could not prejudice bona jide purchasers “ from him, for a valuable consideration, without notice of the «‘fraud.” I do not find that in the Judge’s charge there is ground for this exception. He has not imputed fraud to Little, but left it to the jury to determine, whether, from his whole conduct, it might not be inferred that the title under the application of Joseph Church was abandoned.
On the whole case, my opinion is, that the judgment should be affirmed.
Yeates J.
I sensibly feel the difficulty to which we are subjected, when called upon to judge of the correctness of the answers of the Court below to points proposed by counsel, where the questions put rest on facts, which do not precisely appear to be stated or admitted by the Court. The questions are often put in one view of the case and answered under a different aspect. In such instances, when the evidence is not spread on the record, we are confined to the facts stated by the Judge.
It has been assigned for error, that the Court instructed the jury, that the lines of the adjacent surveys did not form a survey under the warrant granted to Joseph Church. So far as the return of Henry JDonnel of the survey supposed to. have been made in 1769, by William Scull, calls for the lines *400 of adjoining lands, and the trees found on the different courses correspond therewith, it is evidence, and there would be no necessity to re-mark those lines: but where no marked trees can be traced on the other courses specified in the return, it operates powerfully to shetV, that this was a chamber calculation. Whether there was an actual survey made by Scull under Church's warrant was a fact fairly submitted by the Court to the jury under all the circumstances of the case.
Exception 2. I do not now concur in opinion with the Court, when they say, that Church's application was reasonably descriptive of the lands in dispute. But of this the now plaintiffs can take no advantage, as it represented their case in the most favourable light. It is clear to me, that 300 acres on the foot of Muncy hill, on the south side thereof, including the heads of Delaware run, is a vague and loose description. The heads of Delaware run, it is admitted, lie at several miles distance from each other, and of course different tracts of land may be included in these expressions. The words do not call for any specific tract with accuracy and precision: but are general, according to the language cited at the bar, there or thereabouts. At the same time I admit, that when applied to the lands in dispute, the application cannot be said to he shifted or removed. It is of the utmost importance to the community, that the rules governing the titles of lands should be fixed and permanent. These rules as to taking up lands under applications, are correctly laid down by the Chief Justice in Lauman's lessee v. Thomas, in 1811, (4 Binn. 51.) They accurately conform to a variety of decisions wherein I have been present and joined, and are bottomed on principles of sound law, moral h®nesty, and public convenience. Suppose a person possessed of large landed property offering it for sale in distinct tracts. One wishing to purchase a particular tract applies for it in such words as designate the object of his wishes and are confined to one spot, and adheres to his contract with due diligence, performing all his relative duties: his right necessarily takes effect from the time of his application. Should his application be couched in such vague and loose terms, as may fairly include several tracts, without violence to his language, and the person intrusted by the vendor to admeasure the tract reduces it to a certainty, by a survey, his right takes effect from such appropriation. The contract then becomes defined and complete* *401 .and binds the original owner. The negligence of the surveyor in not making a proper return to his constituent ought not to be visited on the purchaser of the lands who has no eontroul over his nomination : and it must be a very strong case of gross negligence under peculiar circumstances, on the part of the applier, before I would hold him affected by official misconduct of the deputy surveyor, in not acting up to .his instructions. In the case of an application, which on its execution is located on different grounds than those applied for, it is obvious, that there being no previous contract for the particular lands, it can only be validated by subsequent consent. The agent going beyond the bounds of his authority could not bind his principal: but where the actual appropriation was known to a party claiming adversely, he had no right to complain if he adventured on a speculation with previous knowledge of all the facts of the case. Under my ideas of the law on this subject, I see no error of which the plaintiffs in error can avail themselves in the Court’s charge.
3, 4, and 5. I readily admit, that abandonment is a mixed question of law and fact, and that it will not, nor cannot be presumed against the truth of a particular case. Stabit presumptio donee probetur in contrarium is a sound rule in all the transactions of life. When the lands in controversy described as adjoining John Little, were advertised to be sold by the commissioners, (of whom Little was one,) for the payment of taxes in 1787, as the property of Paschal, it was a fair argument to be urged against the persons claiming under him, that he gave no notice of his right to these lands: but when no purchaser was deceived or defrauded by his silence, it is of no moment to inquire what would have been the legal result, if the suppositious case had really occurred. The adverse possession of his tenant repelled all ideas of abandonment on his part; although we know not with precision, from the charge to which we are restricted, how long that possession continued. The observations of the Court below were addressed to the jury on matter of mere fact, and-if any false reasoning has been introduced herein, the only remedy of the party is by application for a new trial. Construing the charge fairly and reasonably, I see no radical error therein, in-point of law; although I cannot throughout acquiesce in his deduction's from matters of fact. If the legal result has been stated, although no correct reason has been. *402 given for it, vve cannot as a Court of revision reverse the 'decision on that ground. Whether the defendants below, or those under whom they claimed had an actual survey made on Church's warrant, was submitted to the jury. We have often experienced the abandonment of applications after the opening of the land office on the 3d April, 1769, which duly followed up would have conferred a good title: and it is certain, that even where surveys have been made, they may be relinquished and deserted, from the imaginary ideas of the moment, as to the benefits arising therefrom. Certain it is, that it must be a strong case, wherein presumption of abandonment can arise, on the rapid increase of the value of lands, after the payment of money to insure the title.
The last error assigned, respects mere fact, which I shall pass over without analysing. Upon the whole, I can see no material eiTor for which the judgment should be reversed as to matter of law: and therefore, I am of opinion, that the judgment below should be affirmed.
Brackenridge J. was sick- and absent.
Judgment affirmed.