Tilghman C. J.
(After stating the case.) On the counter-statement no formal issue was joined, but the plaintiff moved the Court to strike out certain points which contained matter of a scandalous nature, impertinent and- unnecessary to the defence. This motion was granted, and the Court gave their opinion and their reasons according to the act of assembly. This is the first error assigned.
1. The Court has a right to preserve the' purity of its re* cords. Its proceedings are not to be converted into a machinery for circulating slander. Whatever is necessary to bring the merits of the cause to trial must be placed on the record, however painful it may be to the feelings of the parties. But there the matter is to stop: and ,the Court may, strike out allegations which wound the character of one party without being of any real service to the other. In the present case nothing which could legally avail the defendants was struck out, except what they might have the advantage of in the issues formally joined upon the pleas of non-assumpsit and payment.. Now it would make no.difference to them, whether they- were permitted- to introduce their, evidence under one plea or- another, .1 am of opinion, therefore, that there is no error in this striking out.
*543 2. The second error is the not permitting to be given in evidence the proceedings of the Huntingdon Presbyter}', on a complaint made against the plaintiff for improper conduct in his private capacity. These proceedings were in some respects directly pertinent to the issue. The plaintiff’s demand is for services rendered to the defendants as their pastor. The Presbytery, according to the rules and discipline of the Presbyterian church, had power .to suspend the functions of the plaintiff, or even to remove him from his ministry. So far as concerned his suspension or removal, the jury were directed to consider the proceedings as evidence. But no regard was to be paid to the details of evidence before the Presbytery. The particular facts alleged, or proved, were to have no effect on- the verdict: the decision of the Presbytery as to the suspension or removal of the plaintiff, was the only matter to be regarded. Every church has a discipline of its own. It is necessary, that it should be so : because, without rules and discipline no body composed of numerous individuals can be governed. But this discipline is confined, to spiritual affairs. It operates the mind and conscience, without pretending to temporal authority. No member of the church can be fined or imprisoned. But,.be he minister or layman, he may be admonished, reproved, and finally ejected from the society. ' So may he retire from the society at his own free will. Under these restrictions religious discipline may produce much good, without infringing on civil liberty. Both plaintiff and„ defendants-were subject to the laws of the church, both as to the induction and removal of the plaintiff According to these laws, it was not in the power of the defendants to remove the plaintiff. The Presbytery alone could do it, with a right of'appeal, first to the Synod, and in the last resort to the General Assembly. This being the case, it was to po purpose to enter into the particulars of the plaintiff’s misconduct before the jury. The cause had been heard, and decided by the Presbytery; and so far as regarded the plaintiff’s continuance in his ministry, that decision is binding, subject to an appeal to the superior ecclesiastical tribunals, as before-mentioned. The Court of Common Pleas was right, therefore, in deciding, that the proceedings before the Presbytery were evidence only so far as they proved the suspension or final discharge of the plaintiff.
3. The third error is the decision,'that what is called the *544 plea in‘abatement in the defendants’ Statement came too late. The counsel for the defendants keenv ter suppose, that by the leave to add, alter; or amend, they had a right to plead uncontrouled by the Court, But it is' not so'. The pleadings are always under the controul of the Cour'tf." Pleas ill abatement ought not to be put in after pleas irf bar, unless under special circumstances of which the Court will" judged' It appeared to the Court, that it was unreasonable to put in a pléá in abatement only the day before trial;' and I Cannot say, I differ from them.
4. The fourth error being the great and substantial point upon which thé cause turns,’! shall not consider it till \ have taken notice of all minor 'objections. ; ' *•
51 The fifth error has been abandoned.
6. and T. The sixth is, that .two of the. defendants, Riddle and Fitzgerald, pleaded,' “ a former suit and 'recovery’’’ in, bar, on which no issue was joined; and the seventh is, thát several of the defendants pleaded releases, bn Which no issue was joined.. It has been observed before, that issues had been regularly joined on the pleas of non-asstímpsit and payment, before the defendants put in their counter-statement. These statements and counter-statements aré creatures of the act of assembly. It seems to have been supposed, that they might be put in by the parties without the assistance of counsel : arid' indeed the obvious intent of the act is to simplify the proceedings, so that they might be conducted without the assistance of counsel. There is no occasion, therefore, for a formal joinder of issue, when the cause goes to trial on the statements of the parties. ' It is now complained, that issues were not" joined’on the pleas contained in the counter-statement: and yet, when that paper was put in, it' could hardly have Been expected, that formal issues should be'joined: for it Is’so multifarious and' informal-, that the plaintiff could not easily take issue, but might' well have demurred to it. Both parties, however, were content to go to trial on the pleadifigs such as they were :' and it does not appear, that the defendants have been injured by it: because the Court gave their opinions to the jury on the validity of the pleas contained in the counter-statenjerif j and if they were wrong in that opinion the defendants may avail themselves of the error. The Court considered the matter of the pleas ás being before them under the act of assembly, although no issue was regularly joined *545 and they instructed the jury, that the plea in abatement was put in. too late, and the pleas in bar were bad in substance. Whether they were right in their opinion as to the pleas in bar, will depend on the construction of the written cohtract which falls within the fourth error. . .
8. The eighth error is, that the judgment is for no certain •sum, but subject to future liquidation. But this is a mistake. The judgment is for the sum found by the verdict, to which is added a note intended for the benefit of the defendants, but forming-no part of the judgment. The object of this .note was to give credit to the defendants, for any payments for which receipts might thereafter be produced. It is not for the defendants, therefore, to complain of it.
9. The ninth error is, that the plaintiff’s statement does not iivev performance of his .part of the contract. There is nothing in this objection. The statement is exactly in conformity to the act of assembly. It describes the writing on which the plaintiff’s demand is founded, with sufficient certainty : mentions the sum which the defendants were to pay him by the year: and concludes with saying, that he verily believes the sum of 1000 pounds to be justly due to him for his services as minister and pastor of the defendants. This is quite sufficient.
I come now to the fourth and last error, the real point of the controversy. [The Chief Justice stated the charge of the Court, and the. written contract of the defendants.] The parties differ widely in their contruction of these writings. The plaintiff understands itas an engagement on the part of the signers of the call, to be jointly responsible to him during the whole term of, his continuing their pastor, for the whole amount of the several sums subscribed by themselves and others. On the other hand the defendants say, that they are bound each for himself only for the sum subscribed by him, and on the terms mentioned in the subscription paper. The call eontains no promise te pay any certain sum, but to provide for the plaintiff’s maintenance in the manner set forth in-the subscription papers. These papers then must be resorted to in ordered to explain the promise. What is the meaning of providing in the manner set forth, &c. ? I take it to mean, that each subscriber of the Call will pay the sum which he promises to pay -in the subscription paper, at the *546 time, and subject to the liberty of withdrawing mentioned in that paper. It is not so clearly expressed as it might be; but the call, after giving an invitation to their minister, refers altogether to the subscription for the pecuniary part of the business. No sum is mentioned: no certainty can be attained, but by reference to that paper. It is said to be extremely hard on the plaintiff to depend altogether on an annual subscription, and to run the risk of the solvency of the individual subscribers: and it certainly is a most uncomfortable situation. Rutón the other hand, for the signers of the call to be responsible for an indefinite time, for the annual payment of a large sum, to be collected from others, is a serious engagement : especially as near two-thirds of the subscribers did not sign the call, and might withdraw at their pleasure. It is not, however, a question of hardship, but of construction. The plaintiff supposes, that his construction is strengthened by the custom of the Presbyterian church, and refers to the form of call which is recommended in their printed book-But, in my opinion, that reference makes in favour of the defendants. By the printed form the figures of the call promise to pay their pastor a certain sum by the year, quarter, or otherwise, without mention of any subscription paper. Now why was that form departed from, unless the signers of the call were unwilling to adopt it? The variation is too material to have happened by chance: and the greater the variation the stronger is the argument, that the defendants determined to reject the usual form, and make a special agreement for themselves. I am, therefore, of opinion, that the defendants were not bound jointly for the whole sum subscribed, but severally each for himself, to the amount of his own subscription, and on the terms mentioned in the paper. The judgment should, therefore, be reversed, and a venire facias de novo awarded.
Yeates J.
My opinion in this tase will be confined to the great question in the cause upon the merits, whether the defendants below were jointly responsible to the plaintiff by their written engagement of 2d September, 1797, for the sum of 134 pounds, 6 shillings, and 9 pence, annually, during his continuance in the church of Shaver’s creek as pastor of the congregation. As to the supposed errors of a minor nature, *547 resting chiefly in technical forms, I shall content myself with expressing- my entire concurrence in the remarks which have been made by the Chief Justice thereon: I cannot add to them.
' ’I he call, as it is termed, signed by 64 persons, and presented to the Presbytery, has been already read. It does not pursue the form pointed out in the Westminster confession oi faith, which requires a stated sum to be ascertained, for the-use of the minister who is invited to the pastoral charge: but the subscribers thereof “ promise to provide for the honour- “ able and comfortable maintenance of Mr. Stevens, in the u manner set forth in the subscription papers, accompanying u this their call, during his continuance -with them as their “ regular pastor.” The subscription papers thus referred to, and made part of the call, are signed by above 150 persons, with the sums of money severally subscribed opposite to their respective names, and contain a clause, k that if any subscriber chooseth to withdraw his subscription, he shall “ have liberty to do so at the end of every year, upon his “paying off the arrears that are then due.” Those different papers must be considered as one instrument, and construed in such a way as to do no violence to either. The signers of the call, it is true, promise to provide for their minister' an honourable and comfortable maintenance, — not any ascertained sum,' — but in the manner set forth in the subscription papers. Taking from the subscribers the liberty of with- ■ drawing their subscriptions would be a deviation from thq terms of the contract.. They promise for themselves individually, not for each other, and the manner of subscription is to govern. I take then the plain meaning of the engagement, reddendo singula singulis, to be no more nor less than this,— every person who has signed either paper is obliged to pay his annual subscription until he signifies his intention of withdrawing, when the year is closed, and pays off his arrearages. The minister is to run the hazard of the money being collected from the subscribers individually: no one is to be, recurred to in case of default by another. The plaintiff below must have adopted the contract in the same sense. He has commenced several suits against delinquent members in his own name; and has given l-eceipts to others, which would .be unauthorised acts in case the call was really a joint or several contract. I am of opinion, that the charge of the Court *548 does not express the true and legal meaning .of the call, and* that therefore the Judgment of . the Court below should be reversed. , • -,
Gibson J. concurred.
Judgment reversed, and a venire facias de novo awarded.