'Tibghman C. J.
having been absent during the argument, gave no opinion.
Gibson J.
The question was, whether a trust resulted to John Sampson who paid the purchase money and took out a warrant for the land in dispute on the 8th April, 1788, in the names of his sons Charles and James the defendants; or whether he intended the land as an advancement. To rebut the implication of a trust, the defendant gave evidence of a variety of circumstances, consisting of declarations of John Sampson, acts of ownership by the defendant, and the common reputation of the country. To rebut this, the plaintiffs offered the deposition of Robert Johnson to prove he was present on the land when a contract for the sale of it was made between John Sampson and one Jf‘ Williams. The defendant excepted, but the evidence was admitted. I can see no objection to the admission of this evidence. Acts of ownership on the land, under the title now set up, and the declarations of John Sampson at the time, tending to explain those acts, were undoubtedly competent. But the deposition of George MiWilliams was offered by the defendant and over-ruled. The witness, after stating that John Sampson had told him he had taken out the warrant, in the name of his sons, proceeded to state, “ that in all the different conversations with the said John Sampson, he always understood John Sampson, allowed the land in dispute to be the property of the said Charles and James.” It is objected to the competency of this evidence, that the witness does not say positively he had, in fact, any conversation with John Sampson and that he does not state any declaration of Sampson, but merely that the witness understood he allowed, &c. Did the matter rest on the first ground, I would have no hesitation in saying the evidence was improperly rejected. The witness positively states one conversation on the subject ; and the inference is as strong as a positive assertion, that he had more. He swears positively he always understood in the different conversations, &c. He could not have understood any thing from conversations that never took place. But the evidence was properly rejected for another reason. To say a witness understood something without stating from what he understood it, is merely to give the impression of the witness without laying the circumstances *332 from which he received it before the jury, to enable them to judge whether he made a just inference. In strictness a wit-ness is not permitted to say he thinks or persuades himself, or believes, or, except in particular cases, to give his opinion as to a fact. The circumstances on which he founds his belief are better evidence and ought to be disclosed, that the jury may draw the conclusion for themselves. If the witness formed his opinion from the declarations of John Sampson, he should have stated what they were, not indeed in the very words used if he could not recollect them, but at least in substance. He may have formed his opinion from ambiguous expressions understood in a sense different from that in which they were intended to be used, or from other sources equally deceptive, and before the result of his judgment is given in evidence it should appear he judged correctly.' It would be attended with great danger if the law were otherwise.
An exception was taken to the charge, on the ground, that the consideration of both law and fact was taken from the jury. The main question was, whether John Sampson intended the warrant as a gift to his sons Charles and James, and this was expressly put to the jury as a question of fact. After recapitulating the evidence, the Judge informed the jury, that some parts of it, for peculiar reasons, were entitled to little or no weight, and concluded by saying,- “ the evidence on the part of the defendant appears to' be very loose, too much so to entitle him to a verdict.” If the Court assume the exclusive right of deciding on facts, it is error; but that assumption must appear clear, before I will believe it intended on the part of the Court, or acquiesced in by the jury. Here the question of fact was submitted to the jury ; but it is said, the Court gave a binding direction as to the •weight of the evidence. The rules for weighing evidence are for the Court; the result of the process'for the jury; but the general principle is.more easy than its application to particular cases. An opinion, however, decisively expressed on the weight of evidence, is not error; but I agree with the decision in The Firemen Insurance v. Walden, 12 Johns. 318, that it must be expressed as opinion, and not as a direction binding on the conscience of the jury. But I do not go so far as to say every charge should so clearly distinguish between the law and the fact, that the jury cannot misunder* *333 stand their rights, or mistake the opinion of the Judge on matter of fact, for his direction in matter of law. . If the right be not taken away at least by implication, it is not to t>e presumed the jury will err on this ground; it is presumed they, at least, know they are called in to decide something, not merely to say whatever the Court may dictate, and it will be sufficient if they are left to know they may so decide. Jurors may err in consequence of the expression of an opinion on the facts, but it is an error, like many others they may commit, which the law will not intend they will fall into without cause. My position is, that the rights of the jury ought not to be considered as invaded when the Court barely expresses an opinion on facts, without at the same time expressly informing the jury, that they may and ought to judge for themselves. But on the other hand, nothing should appear in the charge from which they might reasonably infer they were precluded from considering the facts. Where a Judge lays down a principle unquestionably correct in the abstract, yet if it be stated in a manner likely to produce misapprehension, of his meaning, or a misapplication of it to the' facts, it is error. In this case, I cannot but think the jury considered themselves bound by the opinion of the Court, as a direction as.to the legal effect of the evidence. To say the evidence is too loose to entitle the party to a verdict, looks so much like a positive direction operating on both fact and law, that it .may very well, to say the least, have been mistaken for one. I should be the last to restrain a free expression of the opinion of the Court as to facts, but it would be safe course to inform the jury, at the same time, that they must, ultimately judge for themselves. The judgment must be reversed.
Duncan J.
The merits of this case rest on one single fact. Was the warrant in the names of Charles and James Sampson, admitted to be taken out and paid for by John Sampson the father, taken out in trust for the father, or as an advancement to the sons ?
A trust results by operation of law to him who pays the. Consideration money; yet in general a father taking a conveyance in the name of his child unprovided for, it is held an advancement. It is a prima facie evidence of advancement, and casts the proof on the father alleging the trust. But the- *334 contrary rule prevails as to applications taken out in the son’s name or warrants, paid for by the lather; for then it is to be presumed to the use of the father, and in that case it is incumbent on the son to rebut the presumption. 2 Sm. L. 171, 172. Coxe’s lessee v. Grant, and Fogler’s lessee v. Gobach. But this being but a presumption, may be repelled by circumstances and declarations of the father; the legal title is in the warrantee, but a presumption is raised. Circumstances inconsistent with such presumption will destroy it. The legal presumption is, that if a person actually takes out an appli- ' cation or warrant, and pays for it, it is a trust; that he used the name of the party ; and this holds fully as strong in the case of a child as of a stranger.
A bill of exceptions' was taken to the admission of the deposition of George McWilliams. It is confined to that part of it wherein he states, that in all the different conversations with the said John Sampson, he always understood that he, the said John Sampson, allowed the land now in dispute to be the property of Charles and James Sampson. The word allow, is used in the country not in a grammatical sense; sometimes, as know; frequently, as acknowledge. I take the word allowed here to be used in that sense ; it will then read, in the different conversations I had with John Sampson, I always understood that the said John Sampson acknowledged the land in dispute to be the property of Charles and James Sampson. This is preceded by a declaration by the deponent, that John Sampson had told him that he had taken out a warrant for this land in the name of Charles and James. In 1 Johns. 93, Snell and others v. J. Moses and sons, a witness was called to prove a conversation between him and one of the defendants, in relation to the goods in question, and declared, that he could not recollect the expressions used, but would give his impression as to the substance of the conversation ; this was objected to but received, and on motion to set aside the non-suit on this ground, among others, it was determined, that such evidence was inadmissible. I understood from the conversation I had with him, is certainly a strange mode of expression; the impression of the substance of a conversation. If depositions taken in the country were thus strictly scanned, how many of them must be rejected. Usage decides on the force of language. There was, therefore, error in rejecting that part of the deposition. But a question of the *335 most serious importance arises from the concluding sentence of the charge of the Court. “ On the whole, the evidence on the part of the defendant appears to be very loose; too much so to entitle him to a verdict.” This is complained of on the part of the plaintiff in error, as a decision of the facts by the Court, without submitting the testimony to the jury; the taking of the facts from the jury, whose province it was to decide on them. Error in statement of facts by a Judge, is not the subject of revision in this Court. The only redress is by application for a new trial; if this is refused the party is without a remedy. 2 Binn. 80. Burd v. Dansdale. So an opinion not warranted by the facts. But that is totally different from withdrawing the facts from the cognisance of the jury. The only way in which a cause can be withdrawn from the jury is by demurrer to evidence ; a hazardous matter in parol testimony, where the party not only admits the facts, but every possible rational inference a jury might draw from the facts; every conclusion which the evidence offered conduced to prove. The fact here attempted to be proved by the defendant was, barely to rebut the presumption, that the warrant taken out in his sons’ name was in trust for the father. The father’s declarations, that he intended the lands for the sons, that it was their property, conduced to prove that fact; A1 Court on demurrer to evidence must then have decided on this fact as admitted, and if admitted there was an end of the controversy; the Court drew the conclusion of the law from the facts thus admitted; the whole evidence is insufficient to entitle the defendant to a verdict; admit all that his witnesses have sworn to be true, admit the conclusion to be drawn from their testimony, still it is insufficient. On the good old rule, as it is emphatically called by Chief Justice Jay, Georgia v. Brailsford and others, 3 Dall. 4, that on questions of law, it is the province of the Court, on questions of fact, the province of the jury, to decide ; on this reasonable distribution of jurisdiction, rests all the super-eminent excellence of the boasted trial by jury. It was not an opinion on an abstract question of law, but a decision by the Court on the sufficiency of testimony to prove relevant facts. This evidence was in my mind sufficient for the jury, to have rebutted the presumption of resulting trust. It was not indeed conclusive evidence; it might not have satisfied the jury, but as it was matter for their consideration^ they ought *336 to have had an opportunity to weigh it. The charge was calcu* lated to make the jury understand that the evidence offered was wholly insufficient, being too loose to entitle the defendant to a verdict; this was undertaking to judge for the jury, and amounted to a declaration to them, that any consideration of the evidence was wholly unnecessary; and therefore there was error in point of law in the charge of the Court. It was a declaration, that whatever credit might be given to the witnesses on the part of the defendant; whatever conclusion the jury might draw from the testimony, still it was insufficient in law to entitle the defendant to a verdict. I refer generally to Alwyn v. Ulmer, 12 Mass. 22, and 12 Johns. 518, The Firemen Insurance Company v. Walden, and to Wright v. Small, determined in this Court, September, 1808. Whether the evidence be rejected, or the jury be informed by the Court, it is of no avail, it amounts in effect to the same thing with the jury.
The Court further said, there was little or no weight in the declarations of the father, as they were not made in the presence of Charles. I cannot comprehend why'this should diminish the .weight of the evidence. If the father had by that declaration asserted a trust, not in the presence of Charles, certainly the Court would have been right; but when it was an admission against himself and his title, it did not require the presence of Charles to add weight to it, nor did his absence diminish the weight to which it was entitled; and I cannot consider our systems of jurisprudence to be so deficient, as that if a Court state that evidence was of little or na ■weight, and the reason why it is of little or no weight is assigned by them, on a misconstruction of the law of evidence, it does not subject their opinion so delivered to revision, and if it is found erroneous to reversal. The Court should have left it to the jury to decide, whether the evidence given by the defendant, was sufficient to rebut the presumption of the warrant being taken out by the father in trust for himself, for it is the peculiar and exclusive province of a jury to infer facts from the evidence; instead of which they pronounce on its sufficiency, and direct the jury that it is too loose to entitle the defendant to a verdict.
Judgment reversed, and a venire facids de novo awarded.