The opinion of the court was delivered by ,
Tii.ghmaN, C. J.
This is an action of covenant, by the administrator of John Davis, deceased, against the executors of Ephraim Blaine, deceased, on a writing under hand and seal, executed by the said Blaine, on the 6th of June, 1783. The first question which arose, on the trial of the cause, was, Whether the court was bound to give the construction of the writing, and, if so, what was its meaning? It is a general rule, that the court, and not the jury, are to judge of the meaning of a written instrument, except in certain cases, where the instrument is not to be understood without reference to facts dehors the writing, and then it may be proper that the jury, who are to inquire into the facts, should judge of the whole. But when that is not the case, the court are bound to give the construction; and if they refuse to do so, and leave it to the jury, it is error. It was so decided by this court, in Moore V. Miller, 4 Serg. & Rawle, 279. It has also been decided in other cases, and may be considered as settled law. There is nothing in the writing in question, which is not intelligible without reference to any thing extrinsic, and therefore its meaning ought not to have been submitted to the jury. It consists of two parts. The first, is in the nature of a certificate of the truth of certain facts, antecedent to the writing. The second, is a covenant by Blaine, that he will convey certain land to Davis. In the first place, Blaine certifies, that in the month of May, 1781, he sold to Davis seven hundred acres of land, situate in Middletown township, Cumberland county, two miles from the town of Carlisle, and that a survey made by Samuel Lyon, deputy surveyor, containing two hundred and nineteen acres and seventy-six perches, and the allowance of six per cent, is part of the aforesaid tract, for which the said Davis paid him four pounds, five shillings specie per acre. Then follows an engagement of Blaine, to make the said Davis, or his assigns, a deed of conveyance for the aforesaid two hundred and nineteen acres and seventy-six perches, clear of every incumbrance, up to the 1st of March, 1775. The dispute, on the construction of this writing, was, whether the payment of four pounds, five shillings specie, per acre, referred to the whole tract of seven hundred acres, sold by Blaine to Davis, or only to the two hundred and nineteen acres and seventy-six perches, which, by the subsequent part of the writing, Blaine agreed to convey. The payment might, without any great violation of grammar, havé *137 reference either to the whole tract, or the part. But the strict rules of grammar are not to govern the construction of writings, made by men who are not grammarians. The meaning is to be sought for by a consideration of the whole. Parts that are obscure, may be explained by those which are not doubtful.. I am of opinion, that the payment intended in this instrument, is not for the. whole seven hundred acres, but the two hundred and nineteen acres and seventy-six perches, because it is the latter only which Blaine, immediately after, engages to convey. If he had received payment for the whole, it would have been his duty to convey the whole, and there is no conceivable reason why he should declare, that he had been paid for the whole and yet engage to convey but a part. But a much more important question in this cause, was, Whether the defendants were estopped from denying the payment for the two hundred and nineteen acres and seventy-six perches, which Blaine engaged to convey to Davis. It appears that the instrument on which this action was founded, was in the handwriting of Blaine, that it was loosely drawn, and at a time when he had not before him the articles of agreement between him and Davis, for the sale of the whole tract of land, of which the two hundred and nineteen acres and seventy-six perches were a part. This is evident, because these articles are dated in the month of June, 1782, instead of May, 1781, as mentioned in the writing on which this suit was brought; and the contract was for the sale of a tract containing, not seven hundred, but eight hundred and thirty-two acres. The terms of sale were, six hundred pounds down, four bonds for six hundred pounds each, payable on the 1st of April, 1783, 1784, 1785, and 1786, and one bond for five hundred and thirty-seven pounds, fifteen shillings, payable on the 1st of April, 1787, making the whole amount .of purchase money three thousand five hundred and thirty-seven pounds, fifteeen shillings. On the payment of all these bonds, with such interest as might acerue on them, Blaine was to execute a conveyance to Davis. The defendants offered to prove, that all these bonds remained in their possession uncan-colled, and that no payment of any thing, but a very small sum, had.ever been made by Davis; and the Court of Common Pleas admitted evidence for that purpose. There is no doubt that the certificate of Blaine was evidence of his having received full payment for the two hundred and nineteen acres and seventy-six shillings. But it does not follow that it was conclusive evidence, nor do I think it was. It is very common, in deeds for the conveyance of land, to acknowledge the receipt of the purchase money in the body of. the deed, and also in a' separate receipt at the bottom, or on the back of it, though no money has been paid, Jjut only secured to be paid by bond or otherwise. But whenever the grantee has attempted to ayail himself of these receipts, the grantor has been permitted to show, that the money was not paid. It was so decided by this court, in the cases of Jordan v. Cooper, 3 Serg. & *138 Rawle, 564, and Hamilton v. M'Guire, 3 Serg. & Rawle, 355; also, by the Supreme Court of New York, in the case of Bowen V. Bell, 20 Johns. 338; and, in Maryland, in the case of O'Niel v. Lodge, 3 Harr. & M'Hen. 433. The principle-intent of Blaine's certificate of the 6th of June, 1783, (the present cause of action) seems to have been, to assure to Davis the immediate conveyance of two hundred and nineteen acres and seventy six perches, part of-the larger tract, which he had sold him by the articles of the 29th of June, 1782, and of which, by these articles, Davis was not entitled to a conveyance, until the price of the whole eight hundred and thirty-two acres was paid. And he might perhaps, have acknowledged the payment of the price of, the smaller quantity which he agreed to convey, although, in fact, he had not received the money, but only a bond for it; just as he would have acknowledged the receipt of the purchase money of the whole eight hundred and thirty-two acres, if he had made a deed of conveyance for the same, and taken security instead of receiving the money. And if he had made such a deed, containing such an acknowledgment of payment, he would have been permitted to show, that in truth he had not received the money, but taken the bonds of the grantee, which remained unpaid. Í am of opinion, therefore, that there was no estoppel, created by the writing of the 6th of June, 1783, but the defendants might be let into the evidence, to show the truth of their case.
Another point remains for consideration, — Whether this action can be supported by the administrator of Davis? It is objected by the defendants, that the action should have been brought by the heir, who, if the purchase money has been paid, is entitled to a conveyance, and that (he administrator has no right, by a recovery of damages, to convert the real estate into personalty. I will first observe, that under the circumstances of this case, an action for the recovery of damages is the only remedy which can be had on this contract. Ephraim Blaine having sold the land to a bona fide purchaser who paid full value, and had no notice of the contract between Blaine and Davis, the land is gone for ever. The purchaser has the legal estate, and there is no equity against him. But who is to bring the action for damages ? The administrator of Davis, I apprehend, and no other person. What other person can be entitled to an action ? The contract was with the testator. The action for breach of contract is a personal action, which is transmitted to the personal representative. The heir does not sue-' ceed to an action of this kind. There are contracts which belong to the realty, and run with the estate; and such descend to .(he heir. If the ancestor, for instance, makes a lease, reserving rent, the rent which accrifes after the death of the ancestor, is incident to the reversion, and goes to the heir, who may support an action on the lease made by his ancestor. So, covenants by a tenant, for making repairs, or doing other things on the demised property, for the bene *139 fit of it, run with the land, and the person seized of the reversion may support an action for breaches in his own time. But, in the present instance, Davis was seized of no estate, and therefore no estate descended to his heir — there was no estate to which a covenant could be attached. There was an equity, indeed, but that is quite another thing. When we speak of covenants running with the land, for the purpose of supporting an action, we mean a legal estate in the land. It is not observed, that on the present occasion there is any clashing of interest between the administrator and the heir. But it must not be supposed, that the administrator can at his pleasure convert an equitable estate into personal property, For example — suppose the heir of Davis to be in possession of this estate, no conveyance having ever been made of it by Blaine to a third person, and the whole purchase money having been paid; in that case the heir would have a complete equity, with which he might, if he thought proper, rest content, without calling for a conveyance of the legal estate. If the administrator, under such circumstances!, t/'ould bring an action for damages, because the legal estate was not conveyed, he could recover no more than nominal damages. In the present case, where the heir has never had the possession, and never can have it, the land being conveyed to a third person, if damages are recovered, they will, in the first place, be assets in the hands of the administrator for the payment of Davis’s debts; which are said to be large enough to absorb the whole. It is unnecessary, therefore, to consider who would.be entitled to the surplus, if there were any. The only question, for present adjudication, is, Whether the administrator can support the action ? And, that he can, I think there is no doubt. Indeed, I do not consider it a new point. The principle was decided, by this court, in the case of Freeman (in error) v. Pennock’s Administrator, (Lancaster, May, 1821.) There, Pennock and Freeman had purchased a tract of land in partnership. Each paid a moiety of the purchase money, and the conveyance of the whole was made to Freeman, in trust, as to a moiety, for Pennock. Freeman refused to make a conveyance to Pennock of his moiety. Pennock died, and an action was brought by his administrator for the recovery of damages. The question was .made, whether the action could be supported in his name, and it was held that it could. As we have no court which has power to compel the specific execution of contracts, there may be cases where the heir, who in chancery might enforce a conveyance of the legal estate, may, with us, make use of the name of the administrator, to accomplish the same purpose through the medium'of damages. But this is entering into a wider field.than the present subject demands. Suffice it to say, that in this case the administrator may support the action. I am of opinion, that the judgment should be reversed, and a venire de novo awarded.
- Judgment reversed, and a venire facias de novo awarded.