JESSE SIDWELL *against* ROBERT and JAMES EVANS.

### IN ERROR.

Pen. & W.
1pw383
138  558

1pw383
140  419

1 PW 383
27 SC ² 73

1pw383
225  42,30
f30SC² 73

An agreement to forbear to sue for a *reasonable* time, is a consideration certain enough, upon which to sustain an action

A judge cannot be required to give a *legal* construction to the words of a witness, and say whether in point of *law* they sustain the allegation in point of *fact.* The construction of written evidence is for the court, and of parol evidence for the jury; and an admixture of parol with written evidence, draws the whole to the jury.

Whether a particular cause of action be proper for *a statement,* or whether the statement contains any cause of action; or whether a valid consideration be laid, are points that might be mooted on a motion in arrest of judgment: but they are matters with which the jury have nothing to do.

A plaintiff who states his case more particularly than is necessary, is not bound to the strict proof of circumstances, merely because they have been unnecessarily set out.

Municipal law is a matter of compact, and as such the construction of foreign statutes, as in the case of any other written compact, belongs to the court; and there is no distinction in this respect, between the written and unwritten law.

WRIT of error to the District Court for the city and county of Lancaster.

In the court below *Robert* and *James Evans* were plaintiffs, and filed the following statement, which contains all the facts of the case.

" That *Joseph Sidwell* and *Levi Sidwell,* (brothers of the said *Jesse Sidwell,*) were indebted to *Robert* and *James Evans,* assignees of *Abner Reynolds* and *Lewis Reynolds,* in the sum of four thousand one hundred dollars, the payment whereof was secured by a mortgage, and ten joint and several obligations, bearing date the 21st day of January, 1817, being part of the consideration money of a tract of land sold by the said *Abner* and *Lewis Reynolds,* to the said *Joseph* and *Levi Sidwell,* which said mortgage and bonds were afterwards, to wit, on the 2d day of July, 1817, assigned for full value to the said *Robert* and *James Evans;* and farther, that the said *Jesse Sidwell,* afterwards, to wit, the 30th day of May, 1820, purchased part of said land from his brother *Joseph Sidwell,* and at the same time executed a bond of indemnity to his said brother *Joseph,* in the penalty of six thousand dollars, conditioned, that he, *Jesse Sidwell,* would assume, and take upon himself, the payment of the said mortgage and bonds, and indemnify, and keep harmless the said *Joseph,* from the payment thereof:—and further, that afterwards, to wit, on or about the 20th day of September, in the year of our Lord, one thousand eight hundred and twenty-two, at the city and county of Lancaster, in a conversation then and there had, and held, between the said *Robert* and *James Evans,* and the said *Jesse*

(Jesse Sidwell *v.* Robert and James Evans.)

*Sidwell,* of and concerning the said mortgage and bonds, so, as aforesaid given for the purchase money of the said land, he, the said *Jesse Sidwell,* then and there said, that he considered himself as stepping into *Joseph Sidwell's* shoes, and that he considered himself equally bound, as he, *Joseph,* had been, for the payment of the said money; and then and there, in consideration of the premises to wit, that he had stepped into *Joseph's* place, assumed payment, and promised to keep him harmless; and, also, in consideration that the said *Robert* and *James Evans* would wait a while, and give reasonable time to him the said *Jesse,* and forbear to sue the said *Joseph* and *Levi Sidwell,* for the said sums of money, so as aforesaid secured by the said mortgage and bonds, he, the said *Jesse Sidwell,* at his own special instance, *undertook and then and there promised* to pay the said *Robert* and *James Evans,* the said *four thousand one hundred dollars.*

" And the said *Robert* and *James* aver, that they did wait and give reasonable time to the said *Jesse,* and forbear to sue the said *Joseph* and *Levi* for the said money, upon the verbal promise and undertaking of said *Jesse,* made and accepted as aforesaid, and of which he had notice.

" And the said *Robert* and *James* further say, that they repeatedly offered, and are still ready and willing to transfer the said mortgage and bonds to the said *Jesse,* on his paying the said money; and that they have repeatedly requested him to pay, which he refused, and still refuses to do—the plaintiffs therefore claim of him, on his said verbal promise, the said debt of four thousand one hundred dollars, and interest thereon, from the said 20th of September, 1822, as justly due them."

The only evidence to support the promise, as stated, is contained in the deposition of *William Brown,* of which the following is the material part.

" In 1821 or 22, I was at Lancaster, in the store of *Robert* and *James Evans,* they were talking with *Jesse Sidwell* about paying for the land *Abner* and *Lewis Reynolds* sold *Levi* and *Joseph Sidwell,* he (*Jesse Sidwell,*) said he had bought out *Joseph's* share of the land and that he considered himself as stepping into *Joseph's* shoes, and that he considered himself equally bound as he had been for the payment of the money, and if they would wait *a while,* and not push his brother *Levi,* he would pay them honestly—both of the *Evans'* were there; they were talking of land sold by *Abner* and *Lewis Reynolds* to *Levi* and *Joseph Sidwell.* I understood by *Jesse Sidwell's* talk, he had bought a part of the land, or rather *Joseph's* undivided part."

Exceptions were taken to the opinion of the court, in answer to several points put by defendant's counsel, and which were assigned here as error: and which sufficiently appear in the opinion of the court.

(Jesse Sidwell *v.* Robert and James Evans.)

*Rogers* and *J. Hopkins*, for plaintiff in error.
*Buchanan* and *Jenkins*, for defendants in error.

The opinion of the court was delivered by

GIBSON, C. J.—The mischief produced by the want of a provision in our act of assembly similar to that in the statute of frauds, by which a parol promise to pay the debt of another is void, has induced the courts to lean against a recovery wherever the precise terms of the promise are not explicitly shown by clear and satisfactory proof; and were this case before us on a motion for a new trial, I would readily agree to send it to another jury. But on a bill of exceptions where we have no right to judge of the quantum of the proof, our business is not to correct the errors of the jury, and make a bad precedent, because the case is a hard one. Did the judge plainly misdirect the jury, or omit any proper direction which he was desired to give? The defendant requested him to charge "that the deposition of *William Brown*, given in evidence by the plaintiffs, contains no cause of action; and that, as that is the only evidence of any cause of action on the part of the plaintiffs, they cannot recover:" and this was declined.

On this part of the case only, have I entertained a doubt. The witness testified that the defendant in conversation with the plaintiffs, agreed that. "if they would wait *a while*, and not push his brother *Levi*, he would·pay them honestly." Undoubtedly to wait a while, and not to push *Levi*, were both efficient causes of the promise; and neither being idle or frivolous, the insufficiency of either as a separate consideration would be fatal. It is well settled that a general forbearance is to be intended a perpetual forbearance; but how far a forbearance not perpetual, but for an unspecified time is a valid consideration, is not so clear. It seems to be agreed, there must be a substantial suspension of the right to sue; and therefore an agreement to forbear *per breve;* or *paululum tempus;* or *pro aliquo parvo tempore;* or even *pro aliquo tempore;* which resembles the case at bar, is insufficient, because such an agreement is so uncertain in its terms as not to stand in the way of a suit the next moment. 1 *Com. Dig.* 196. But in all these instances the question stood on the pleadings, and the extent and meaning of the words were to be determined by the court: here they were for the jury. Forbearance for a *reasonable* time is clearly certain enough; and being so laid, it is said the judge at *Nisi Prius*, shall be judge of that, or leave it to the jury on the circumstances, (*id.*) Take it, then, that the plaintiff had so laid his case in a declaration, (and the mode of pleading directed by the legislature, will surely not affect the case as it stands on the evidence,) could the judge have been required to give a *legal* construction to the words of the witness as if they stood in a deed or a will, and say whether in point

(Jesse Sidwell *v.* Robert and James Evans.)

of *law* they sustained the allegation in point of *fact*? That the construction of written evidence is for the court, and of parol evidence for the jury—and that an admixture of parol with written evidence draws the whole to the jury, are principles which appear every where in our books; particularly in *Welsh* v. *Dusar*, 3 *Bin.* 377. *Denison* v. *Wurtz*, 7 *Serg. & Rawle*, 372.     *Moore* v. *Miller*, 4 *Serg. & Rawle*, 279. *Watson* v. *Blaine*, 12 *Serg. & Rawle*, 131. *Overton* v. *Tracy*, 14 *Serg. & Rawle*, 311.     *Brown* v. *Campbell*, 1 *Serg. & Rawle*, 176.     A judge is not bound to give an opinion on facts; or to say what the law is on the whole evidence: he may *advise*, but if he *directs* the jury to find in a particular way, it is error. *Galbraith* v. *Black*, 4 *Serg. & Rawle*, 210.     *White* v. *Kyle*, 1 *Serg. & Rawle*, 515. *Jones* v. *Wilder*, 8 *Serg. & Rawle*, 150.     In *Sampson* v. *Sampson*, 4 *Serg. & Rawle*, 329, which would be in principle the case at bar, the judgment was reversed because the judge concluded by saying that the evidence was "very loose—too loose to entitle the plaintiff to a verdict." I am aware that the propriety of this decision has been doubted by the profession; not however, because a binding direction on a question of fact, is not error, (for no lawyer ever doubted that,) but because it has been thought that nothing in the expressions of the judge ought to have induced a suspicion that he meant to take the cause from the jury. It is clear, therefore, not only that the judge was not only free to decline the directions prayed for here, but bound not to give it. The meaning of the parties as expressed by themselves and detailed by the witness, was exclusively for the jury who alone are competent, in legal estimation, to the construction of words spoken; and perhaps there was enough even in point of reason to warrant the verdict. But it is said there is positive error in the direction obtained by the plaintiffs, that "the jury must decide from the testimony in the cause. If they believe from that testimony that the defendant agreed for the consideration set forth in his statement, to pay the *whole* amount of the mortgage, being the sum of four thousand one hundred dollars, as the plaintiffs have alleged, then such agreement constituted a valid contract; and if the plaintiffs have performed the consideration, they are entitled to recover the amount: otherwise not." Who can doubt it? The direction is in guarded conformity to the rights of the jury over the facts. But it is said that it was so ambiguous as to authorise a verdict for the amount of the mortgage, although all the instalments were not due when suit was brought. But the propriety of such a verdict would depend on the terms of the promise, which might be to pay even before the original debt should be due. But taking for granted that the judge might have directed the contrary as matter of law, was he bound to go beyond the proposition submitted, and present the case in every aspect of which it was susceptible on the evidence? If such were the rule no judgment would ever be affirmed; for there are few judges, in courts of error, whose inge-

(Jesse Sidwell *v.* Robert and James Evans.)

nuity would not suggest something in addition, that might have been appropriately said. It has, however, been determined by this court, when its vision in the inspection of error was certainly not dull, that a judgment is not to be reversed because the judge has not made ALL the remarks of which the nature of the case may admit. *Lilly* v. *Paschall's* executors, 2 *Serg. & Rawle*, 394. But the truth is, that although the judge might have advised a verdict for no more than the amount of the instalments due, or for the defendant generally, it would have been error to direct it; the terms of the promise, as well as performance of the consideration, presenting questions which were purely for the jury.

Whether this particular cause of action be proper for a statement, or whether the statement contains any cause of action, or whether a valid consideration were laid, are points that might be mooted on a motion in arrest of judgment, but they are obviously matters with which the jury had nothing to do.

If a plaintiff, having stated his case more particularly than was necessary, is bound to prove it strictly as stated, the legislature has attempted in vain to guard against the common law mischief of variance between the *allegata* and the *probata*, for which many a meritorious plaintiff was turned out of court. The statement act which was produced by the inconvenience of strict pleading has always been liberally construed in suppression of the mischief, and advancement of the remedy; as in *Boyd* v. *Gordon*, 6 *Serg. & Rawle*, 53, and *Riddle* v. *Stevens*, 2 *Serg. & Rawle*, 537, where an averment of performance of previous conditions was held to be unnecessary. Little would be gained if a party were held to strict proof of circumstances, merely because they had been unnecessarily set out. Even at the common law, an immaterial averment, which may be separated from the principal fact without prejudice to the cause of action, while a sufficient allegation is still left, requires no proof. *Starkie's Ev. pt. IV.* 347-8-9. Here in addition to the date of the promise and the amount claimed, which is all the act requires, the plaintiff set forth his supplementary statement, various unnecessary details which may be struck out leaving a distinct substantive cause of action; and as the averments about the mortgage were immaterial they might, consistently with the nicest principles of the common law, be disregarded. But there was another statement filed, in which these unnecessary details were omitted; and why might not the plaintiffs recover on that, as on a particular count in a declaration? It was not withdrawn when the second was filed, and the plea expressly put it in issue; why, therefore, shall not the second be considered only as an *additional* count? If a plaintiff may not state his case in several ways to give him the benefit of the chances afforded by the evidence; and is nevertheless to be held to the strictness of common law proof, his condition is worse than it was before the legislature interfered to protect him.

50

(Jesse Sidwell *v.* Robert and James Evans.)

A promise, in consideration of forbearance is undoubtedly not binding, if there were originally no cause of action. But as the plaintiffs were entitled to sue the Messrs. *Sidwells* as assignees of their bonds to the Messrs. *Reynolds*, there was a sufficient liability, independent of the assignment of the mortgage, which, however, being proved at common law, might well go to the jury for what it was worth. The defendant will, at all events, have the benefit of it as a security, as amply, as it could be enjoyed by the plaintiffs or the Messrs. *Reynolds*, whom the court of chancery in Maryland would doubtless compel to assign to him, if the assignment to the plaintiffs were invalid. I mention this part of the case for the opportunity which it presents, (the point having been incidentally mentioned in the argument,) of correcting an error into which I fell, in *Mullikin* v. *Aughinbaugh*, 1 *Penn. Rep.* 125, by asserting that the construction, as well as the existence of foreign laws, is for a jury and not for the court. Municipal law is a matter of compact, and as such, the construction of foreign statutes, as in the case of any other written compact, belongs to the court. A plausible distinction might be taken in this respect, between the written and the unwritten law, which necessarily rests on parol; but it seems to have been disregarded in *Mogston* v. *Fabrigas, Cowp.* 174. *Dougherty* v. *Snyder,* 15 *Serg. & Rawle*, 86. *Consequa* v. *Willing*, 1 *Peters, C. C. R.* 225. *Robinson* v. *Clifford,* 1 *Wash. C. C. R.* 1. and *Setons* v. *Delaware Ins. Co. id.* 175—a weight of authority more than sufficient to bear down any argument that could be raised on a mere theoretic foundation.

The remaining point which regards the supposed recovery of more than was due at the institution of the suit, is already disposed of. The sum to be recovered depended on the nature of the promise which was to be ascertained by the jury. If there was any legal impediment to a recovery of the whole, it was the business of the defendant to point it out and desire the benefit of it, instead of which he put the whole to the court as an unmixed matter of law. The terms of the promise are undoubtedly so uncertain and imperfectly stated by the witness, as to render a recovery on it exceedingly dangerous; but having no discretion, we cannot reverse for an insufficiency of the evidence, and we discern no misdirection in point of law.

Judgment affirmed.

Rogers, J. dissented.

Huston and Smith, Justices, not having heard the argument, gave no opinion.