OF THE STATE OF ARKANSAS. 65

TERM, 1856.]                    Vaugine et al. vs. Taylor et al.

## VAUGINE ET AL. VS. TAYLOR ET AL.

It is a usual practice, in chancery, to file a motion to suppress depositions for some defect or omission apparent on the face of the depositions, extrinsic of their substance; but not to move to *exclude* them for irrelevancy, or on account of the matter deposed to.

Where two or more instruments are executed at the same time, relate to the same subject matter, and one refers to the other, either tacitly or expressly, they are to be taken together and construed as one instrument.

Where a deed of conveyance for an interest in a claim to land is expressed to be for a money consideration, the receipt whereof is acknowledged: and at the same time the parties enter into an agreement, with such reference to the deed as to require that both instruments be construed together, with covenants by the grantee for personal services in the prosecution of the claim for the benefit of himself and the grantor, the law will presume that the true consideration of the deed was for the money, as well as for the services.

The acknowledgment in a deed of the consideration money having been paid, is only *prima facie* evidence of the payment of the money, and may be controverted like any other receipt, by parol proof, except for the purpose of defeating the conveyance, and the true consideration shown: but this must be by clear and conclusive evidence.

*Appeal from the Circuit Court of Jefferson county in Chancery.*

The Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL & CARLTON for the appellants.

That parol proof is not admissible to vary, explain, or contradict a deed, nor can the terms of a deed be varied or explained by parol, where there is no latent ambiguity. *Singleton vs. Fore,* 7 *Miss.* 515; *Same vs. Price,* 5 *Ib.* 101; *Davis vs. Davis, Ib.* 56; 1 *Ala.* 436; 1 *Brevard* 166; *Falconer vs. Garrison,* 1 *McCord,* 209; *McCullock vs. Girard,* 4 *Wash. C. C. R.* 289; *Greenleaf chap.* 4, *p.* 162; 3 *Starkie* 1008.

**66** CASES IN THE SUPREME COURT

Vaugine et al. vs. Taylor et al. JULY

Where a contract is reduced to writing all anterior and contemporaneous stipulations and representations are merged in the writing. *Gooch vs. Conner*, 8 *Miss.* 391.

Parol evidence is admitted to enlarge or lessen the consideration of a deed; but the authorities have not gone so far as to permit the consideration to be changed from one kind of consideration to another, or permit, where there is a money consideration expressed, parol proof to show that there was no money consideration. *Dozier vs. Duffee*, 1 *Ala.* 320; *Bangs vs. Snow*, 1 *Mass.* 182; *Lazell vs. Lazell*, 12 *Verm.* 443; *Grant vs. Townsend*, 2 *Hill* 554; *Emmonds vs. Littlefield*, 1 *Shep.* 233; *Kerr vs. Calvit, Walker* 115; *Byers vs. Mullin*, 9 *Watts* 266; *Greennoult vs. Davis*, 4 *Hill* 643.

Parol evidence is inadmissible to prove that a deed, which sets out a money consideration, was not given for a money consideration. *Hurn vs. Soper*, 6 *Harr. & J.* 276; *Maigley vs. Hoover*, 7 *John.* 341.

Parol proof may establish a consideration, provided it is not different in kind from the one expressed in the deed. *Taulmin vs. Austin*, 5 *Stew. & Port.* 410; *Jackson vs. McChesney*, 7 *Cow.* 361.

PIKE & CUMMINS, and GALLAGHER for appellees.

That the deed and agreement should be taken together and construed as one instrument. *Johnson vs. Parkhurst*, 4 *Wend.* 374; *Jackson vs. Freer*, 17 *J. R.* 31; *Fair. R.* 336; 2 *Bibb* 610; 8 *Ark.* 257; *Cornell vs. Todd*, 2 *Denio* 130; 3 *Ph'll. Ev.* 1422.

That the consideration expressed in a deed may be shown, by parol, not to be the true one, and that the real consideration was more or less than the one expressed. *Rawle on Cov. for Title* 96, 97, 98 *and notes; Sedg. on Dam.* 178 *and notes;* 1 *Greenl. Ev. sec.* 27, *note* 1; 3 *Phill. Ev. p.* 1441, *n* 264; 2 *Phill. Ev. p.* 217; 518; 5 *Smedes & Marsh.* 238.

Whenever a money consideration is expressed, any valuable consideration may be proven to have been the real one. 7 *Pick.* 533; 2 *Wash. C. C. R.* 31; 3 *Mon.* 349; 4 *Monroe*, 27, 373;

OF THE STATE OF ARKANSAS. 67

Term, 1856.]                Vaugine et al. vs. Taylor et al.

1 *McCord's Rep.* 514; 3 *Hawks* 238; 4 *Dev.* 355; 1 *Shep.* 233; *Wright* 755.

The acknowledgment in a deed of the receipt of the consideration, is not conclusive evidence, that any consideration has been paid, much less, an adequate consideration. *Needey vs. Mark,* 4 *Iredell Eq.* 339; *Harrel vs. Lindall,* 10 *Miss.* 488; *vol.* 8 *Annual Digest,* 1848, *p.* 95.

The clause in a deed acknowledging payment of a consideration, is only *prima facie* evidence of the amount, liable to be varied by parol proof. *Meeker vs. Meeker,* 16 *Conn.* 383; *Beack vs. Packard,* 10 *Verm.* 96; 22 *Verm.*—; *Kembal vs. Tenor,* 12 *N. Hamp.* 248; *Johnson vs. Taylor,* 4 *Dev.* 355; *Byers vs. Mullen,* 9 *Watts* 296.

Mr. Justice HANLY delivered the opinion of the Court.

The appellants, complainants below, filed their bill against the appellees, defendants below, in the Circuit Court of Jefferson county, charging, in substance, that they and certain of the defendants, are the sole heirs at law of one *Don Joseph Valliere*, to whom a large concession or grant of land had been made by the Spanish Government, when that government owned the province of Louisiana. The bill omits to describe the grant, and fails to aver its validity under the Spanish laws, or its recognition or establishment under the government of the United States, since the cession of Louisiana. The complainants further charge that, on the 5th day of June, 1841, they, in common with the other heirs of Valliere, executed a power of attorney to, and in favor of the defendant Taylor, which is duly exhibited with the bill. This power of attorney recites the death of Valliere, and the descent of the complainants from him, and proceeds as follows: " For the purpose of receiving to themselves as speedily as possible, by petition, suit or suits, compromises or arbitraments, or by legislative enactment, or by sale, their just rights derived to them from Valliere from and under the King of Spain, said parties constitute irrevocably" the defendant Taylor their attorney:

1st. " To sell, bargain, convey, release, transfer, grant, mort-

gage or make over, for such consideration or considerations as he might think proper all their rights, interest and claim, to any and all grants of land, by, or under authority from the Spanish government to said Valliere, in the province of Louisiana, as held by that government when ceded to France, and as it existed, when ceded by France to the United States, or any part, lot or portion of such grants as have not been heretofore reduced to the possession of the said heirs of the said Don Joseph."

. 2. To demand, by suit or petition, or acquire by legislative enactment, compromise or agreement, arbitrament or confirmation by the government of the United States, possession or occupancy in quit-title of or to any lands granted as aforesaid by the government of Spain to Valliere, or any portion of it.

3d. These powers are specially to apply to, (among others re-,cited) a grant made by Spain in 1793, mostly in Arkansas, perhaps partly in Missouri, described in a plat by Fred. Fredson, Surveyor General of the Spanish government, on the 24th October, 1793.

4th. They give their attorney full power of substitution.

This power is signed by *Godin*, on behalf his three minor children: by *James* and *Martha Brooks* for a minor child of Stephen Vaugine, and by the defendant Taylor, for his three minor children.

The bill proceeds to charge that, on the 23d June, 1841, the defendant Taylor, " in pursuance, and under the power of at-torney aforesaid," made a deed of donveyance of one half of all the interest in the *Don Joseph Valliere* grant, consisting of about 4,000,000 acres, "for the consideration of $30,000, to him then in hand paid, to John Wilson of Missouri;" which deed is duly exhibited with the bill.

The deed purports to be made between the heirs of Valliere of one part, and Wilson of the other; the consideration, $30,000, being acknowledged to have been received by the parties of the first part, and conveys one half of the Don Joseph Valliere grant, on White river in this State and Missouri, to Wilson, and contains covenants for further assurance and against prior conveyances by the parties.

The signing of this deed differs from the power of attorney, in this,—that Taylor, the defendant, signs it as attorney for the others, and for himself: and there is no mention therein, that one of the parties acted for, or represented minors in the execution of the deed.

The bill further alleges all the other defendants, besides Taylor, to be jointly interested in the grant and the money sued for: charges that, though the defendant Taylor received the $30,000, at the date of the deed, he has never paid over any part,—never informed complainants of his action,—that they but recently, and by accident, discovered the deed, whereby they came to the knowledge of the fact, that he had received the money, and learned what he had done, and that the money and interest are still due thereon: that defendant Taylor had received other large sums, and made other sales in respect to such grant: that Taylor fraudulently concealed his acts: that complainants were ignorant of the English language, and never intended or understood the power to be irrevocable, and the insertion of that term was a fraud on their understanding, and ignorance of the English language, and ask to have the power revoked.

That Taylor has done many negligent and careless acts in regard to the grant, whereby their title has become incumbered, and their rights injured to the amount of $50,000.

The bill expressly charges that Taylor received the consideration, $30,000, expressed in the deed to Wilson, and specially interrogated him on the subject.

There is no prayer for special relief, except that the power of attorney may be canceled, and title papers given up. There is a prayer for general relief.

Taylor answers—gives a history of the White river grant to Valliere, and exhibits what purports to be copies of the grant. He avers that the grant consisted of 4,000,000 acres or more: was never recognized or confirmed by the United States: that great difficulty existed in the establishment of the claim, and alleges that no person interested in the claim, had the means to prosecute it; and that all the parties expected and designed, that persons should be employed to prosecute the claim for an

interest, or that means to do so should be raised by mortgaging it: That the power given to him was given expressly for the purpose of procuring some one to prosecute the claim, if that could be done by transfer of part of, or mortgage on, the claim: That the power to him was wholly voluntary and without consideration, coupled with no interest, and was revocable regardless of the declaration on the face, to the contrary: that the power was drawn by a lawyer of the selection of the complainants, and no fraud or imposition exists on his part with respect to the power.

He admits the deed to Wilson, but avers that it was executed by him in strict conformity to the wishes and intention of the parties, including complainants, expressed when they executed the power to him, and declares that the only object and consideration of the deed were to procure the services of Wilson in the prosecution of the claim; and there never was any other consideration: that no money or property ever was given or received in the transaction, and none ever was to be given or received: that the consideration in the deed was mere matter of form.

The answer further states that, at the same time the deed was executed and delivered, there was executed by Wilson and the other parties to the deed, an agreement under seal: that this agreement is exhibited with the answer, from which it appears that the deed is referred to therein as a part thereof, and declares that " in addition to the statements in the deed," Wilson is to prosecute the claim to the grant, in such manner as he shall judge proper, to use proper exertion, and whatever is recovered, the heirs of Valliere are to have one half, and Wilson the other half, according to the covenant in the deed, as already conveyed to him: that Wilson should be at all expense: provides for the prosecution of other supposed grants, and division of the property that might be recovered, etc.: provides for disposition by Wilson, on receiving power for the purpose, of a portion of the claim recovered to Valliere's heirs.

Both instruments, the deed to Wilson and the contract with

him, are witnessed by *John R. White* and *Chancey Lewis*, and bear the same date, and at the same time acknowledged. The agreement purports to have been recorded, in Jefferson county, on the 27th September, 1848. Taylor further answers and says that he always gave full information, in respect to his conduct in the premises, to any of the parties who called on him. He further states that on the 8th October, 1850, the heirs of Valliere, including the complainants, entered into a contract with one Loyal Case in respect to the same grant: states that the agreement with Case was in writing, which is exhibited, by copy, with the answer; from which it appears that Case bound himself to prosecute the same claim at his own expense for one-fourth of the grant. This contract admits the grant to be unconfirmed by the United States, and contemplates a suit, or legislative proceedings, to establish it. In this contract, the heirs agree, in case of success, to confirm to the said Case, his then interest in said grant, consisting of 328,000 acres, which he purchased from John Wilson and D. B. Talmadge. Case stipulates, on establishing the claim, to prosecute a suit against Wilson, or any one claiming under him, for the purpose of setting aside the sale of one half of said grant to said Wilson. The heirs bind themselves to give Case one-half of the lands recovered from Wilson, or his vendee, for his trouble and expense in prosecuting the suit: they also agree not to make any arrangement or contract with any one else, or cause suit to be brought on their account, whilst Case has charge of the prosecution of said claim and suit. Case agrees to frame the petition, (or amend it) filed to establish the grant, so that the heirs shall not be compromised in their rights as against Wilson.

Taylor further states in his answer, that on the 14th July, 1848, Gracie, the husband of one of the heirs, made a contract with one David J. Baldwin, intended to procure the prosecution of the claim, but which contract was abandoned before it was perfected, or of force as between the parties, before the contract with Case was entered into. Taylor furthermore states in his answer, that the foregoing are all the contracts or transactions in which he had any agency in regard to the said grant, or

which could, in any manner, affect or incumber the grant: in all of which, he avers, he acted in perfect good faith, for the best interest of the parties concerned, without the least compensation or benefit to himself in that connection, or for any labor or trouble imposed on him, unnecessarily, in respect thereto. He positively denies all fraud laid to his charge: pleads the Statute of limitation to all money demands alleged to exist against him, or for neglect, or injury from his acts: all which, however, he utterly denies. He demurs to the bill, and reserves the right at the hearing, to insist on all defects, etc. He avers that, before the power of attorney was given, all the heirs, who were of age, were advised of the terms proposed by Wilson, and the power was given in direct reference to the conclusion of a contract with him upon the terms substantially adopted by him, subsequently, in the deed and agreement with Wilson. He denies the legitimacy of the descendants of Francis Valliere, part of the complainants.

The answers of the other defendants, admit the truth of Taylor's answer and corroborate him in all things.

On coming in of the answer of Taylor and the other defendants, the complainants filed an amended bill, on the 14th November, 1853, the chief object of which seems to have been to make Hoard, who bought out McCay, one of the heirs, and Loyal Case, who had acquired an interest in the grant, under his contract mentioned in Taylor's answer, defendants. But the amended bill also alleges and exhibits the deeds, or copies of them, showing that Wilson had sold portions of the interest in the grant conveyed to him by Taylor, to Peters and Baldwin, for which, it is alleged, they had given him $85,000. They furthermore allege that from the carelessness and negligence of Taylor, in regard to the matters confided to his care by said complainants, under the power of attorney, they had sustained loss, in addition to that charged in their original bill, to the amount of $50,000. Taylor answered the amendment and denied any knowledge of sales of land by Wilson, or of the genuiness of the deeds exhibited in the amended bill. States from information he believes the lands, purporting to be conveyed by

said deeds, do not lie within the boundaries of the grant of Valliere. Avers that he never received any sum in respect to said lands or grant. Pleads the Statute of limitations and reserves his demurrer, etc.

Replications were entered to the answers of Taylor.

Complainants moved to suppress the depositions of Taylor on the ground of their competency.

The depositions of Charles and Ignace Bogy were read on the part of the complainants, with the view of proving the legitimacy of the complainants, as heirs of Valliere. The one of Charles is unsatisfactory on this point, and leaves the question in great doubt and uncertainty. The one of Ignace is to this effect: " that Valliere begat several children, as it was said, one of whom was called Dotrive, and Dotrive begat a large number of persons called Valliere." This was the substance of all the proof offered by complainants, except that which established the several exhibits, accompanying the original and amended bills.

Taylor, by his proof, fully sustains every position taken and assumed by him in his answers. Jones and Scull give the history of the transaction, from the commencement of the negotiation of Taylor with Wilson—established the nature of the transaction: the perfect knowledge of all the parties of the object in view; of the preliminary conversations with Wilson: of the price to be given for his services before the power was given, and the immediate communication by Taylor of the conclusion and nature of the contract, and the perfect satisfaction of all parties with the contract as made with Wilson.

The testimony of Lewis, White and Underwood, the two former, witnesses to the deed from Taylor to Wilson, and the latter, the magistrate before whom it was acknowledged, proves very clearly what transpired between Taylor and Wilson, at the time the deed was executed and acknowledged, and shows conclusively that no money was paid by Wilson to Taylor, but on the contrary, that the consideration for the deed was the covenants and stipulations contained in the agreement on the part of Wilson to the complainants, in respect to the lands embraced

6

in the grant, and the services to be performed by him in the way of its establishment and ultimate recovery.

On this State of pleading and evidence the bills of complainants were dismissed at the hearing, and a decree for costs rendered against them by the Court: from which they appealed to this Court.

There are several interesting, though somewhat intricate and nice questions presented for our consideration and determination in this cause, which we will state, with the view of disposing of them in their order, *to-wit:*

1st. Did the Court below err in refusing to exclude the depositions of Scull, Jones, White and Lewis, on the motion of the complainants?

2. Whether the deed to Wilson is, of itself, evidence of the receipt of the money acknowledged therein as the consideration from Wilson to the defendant Taylor, taken alone, or in connection with the agreement between the parties, executed at the same time?

3d. Whether the deed, if proof of the receipt by Taylor, is *absolute*, or only *prima facie* evidence of the fact?

1st PROPOSITION.—It seems that the motion of the complainants to exclude from the consideration of the Court below, the depositions of Scull, Jones, White and Lewis, was based on the assumed fact that their depositions, in the language of the motion, "are wholly irrelevant, and because they attempt to show a different consideration from that expressed on the face of the deed upon which this suit is founded, without showing that there was either *fraud* or *mistake* in the consideration of said deed; and because they attempt to show a different contract from the written contract averred by the exhibit in the answer of Creed Taylor."

It appears from the transcript, that this motion was made, filed, and acted upon, on the 10th November, 1854, just one day before the final hearing, which occurred on the 11th November. In practice, we have never known such a motion made in a chancery cause. A motion to suppress depositions is a common

and ordinary course of practice; but such motion is, usually, based on some defect or omission, apparent on the face of the depositions, extrinsic of their substance, resulting from improprieties of the parties at whose instance they were taken, the witnesses themselves, or of the officer before whom they were taken, etc. See *Adams Equity p.* 805; 2 *Daniel's Chy. Pl. & Prac.* 1144–5, *et seqr.* We think the Court below could not have done otherwise than to have overruled the motion of the complainants to exclude the depositions of the witnesses named, for the causes assigned, taking into consideration the time at which it was made. If such a motion should, under any circumstances, be entertained by a Court of Chancery, it should only be done after publication of all the testimony in the cause, for without the entire testimony should be before the Court, we cannot conceive it possible for the Court to have determined the motion, viewing it in all its bearings and latitudinal scope; for the Court could not know whether, "fraud or mistake" had been shown (except by reference to the depositions moved to be excluded) without appealing to the whole case, and the various mediums through which evidence is brought before a Court of Chancery, unless it should be insisted, as the motion of the complainants in this instance seems to assume, that each deposition should contain intrinsic evidence, of itself, independent of any other evidence in the cause, of its pertinency, relevancy and competency. Another view, which induces the conclusion to which we have come on the subject, is, that the motion itself is a vain one, for the reason, that if the depositions of the witnesses should be found at the hearing to be obnoxious to the objections assumed in the motion, the chancellor, as a matter of course, would discard them. It is presumed that, in forming and making his decree, such questions as those propounded by the motion we are considering, present themselves to his mind, and are then settled, or the chancellor would exclude them as on motion or exception. We therefore hold, in view of these reasons, that the Court below did not err in overruling the motion of complainants to *exclude* the depositions of the witnesses named.

2d *Proposition.* This is a more delicate and intricate question

than the one we have just disposed of. The question, as propounded, is double, and to be properly considered, should be divided. We will, therefore, for the sake of perspicuity, subdivide this proposition into two enquiries, that is to say:

1. Does the agreement made between Wilson and the heirs of Valliere, by reference and recitation, become a part of the deed from the heirs of Valliere to Wilson so that, in construing the one, we may, legitimately, consider the other, or in other words, should they properly be construed together for the purposes of this suit.

2d. And if those documents are to be thus construed, should it be considered that they do not afford evidence, of themselves, that no money was paid by Wilson to Taylor, as the consideration for the deed from the latter to the former, whether that fact may be established in a Court of equity, by parol testimony?

In answer to the *first* enquiry under this head, we have no hesitancy in laying down the law to be, that where two or more instruments are executed at the same time, relate to the same subject matter, and one refers to the other, either tacitly or expressly, they are to be taken together, and construed as one instrument. See 3 *Phillips Ev.* 1422 *and authorities there cited and collected; Wad us. Reanare,* 7 *S. & M.* 319; *Johnson vs. Parkhurst,* 4 *Wend.* 374; *Jackson vs. True,* 17 *J. R.* 31; *Connell vs. Todd,* 2 *Denio* 130; *Parsons on Cont.* 66.

In the case at hand, the instruments in question bear date the same day,—are attested by the same witnesses—are acknowledged before the same magistrate, on the same day—relate to the same subject matter—are between the same parties, and the agreement, absolutely, by positive and direct reference and recitation, refers to the deed. It cannot be otherwise, therefore, in construing the contract between the parties, than that both instruments should be looked to, as embodying the essence of what was agreed upon and contracted by them at the time. These contracts, the deed and agreement, are both under the seal of the parties. The one is as conclusive against and estops the parties as effectually as the other. We cannot

conceive how it could possibly be questioned, from the face of these documents, that they must be construed together.

As to the *second* enquiry under this head, we have already said that the deed and agreement should be construed together. We, however, do not conceive, they, when thus construed, offered intrinsic evidence that the sole consideration inducing the execution of the deed, was the covenants, on the part of Wilson, in the agreement. We think it most natural and reasonable to believe, from the face of these instruments, that the consideration inducing the execution of the deed was, in part, the $30,000 expressed therein, and the additional consideration set forth in the agreement. We are forced to this conclusion, from the fact, that the interest conveyed to Wilson was one half of *four millions of acres of land!* and the additional reason that, if this construction does not and should not obtain, the consideration expressed in the deed would be defeated by that expressed in the agreement, and thereby violate a known and fixed principle in the law, which obtains in all cases where deeds or instruments in writing are to be construed, that is to say, that they should be construed so that each and every part of them should have effect, or if this cannot be done with consistence, then, that the first shall prevail over the latter. See *Davis vs. Tarwater*, 15 *Ark. R.* 287; 2 *Parsons on Cont. p.* 26.

We hold, therefore, in this case, that the consideration, as manifested by the deed and agreement, independent of any other medium of evidence, was the $30,000 and the covenants, on the part of Wilson, in the agreement; and, furthermore, that that portion of the consideration, which is expressed to be in cash, *to-wit*, $30,000, was paid to defendant Taylor, for his principals, at the date of the execution of the deed. But at the same time that we thus hold, there can be no serious doubt that the evidence thus afforded is only *prima facie* against the defendant Taylor, the law in such case being that the acknowledgment in a deed of the consideration money having been paid, cannot be controverted for the purpose of defeating the conveyance, but for any other purpose may be controverted like any other receipt: or in other words, that the clause in a deed

78 CASES IN THE SUPREME COURT

Vaugine et al. vs. Taylor et al. JULY

acknowledging the payment of the consideration is mere *prima facie* evidence of the payment, and may be controverted and repelled by parol proof. See *Clapp vs. Terrill*, 20 *Pick. R.* 247; *Mc Crea vs. Purnet et al.*, 16 *Wend.* 460; *Prichard vs. Brown*, 4 *New Hamp. R.* 397; *Hickman & Pearson vs. Mc Curdy*, 7 *J. J. Marsh. R.* 555; *Greley vs. Grubbs*, 1 *J. J. Marsh.* 390 *et seqr.;* *Barney vs. Moss*, 3 *N. H. R.* 134; *Morse vs. Shattock*, 4 *Ib.* 229; *Shepherd vs. Little*, 14 *J. Rep.* 200; *Wilkinson vs. Scott*. 17 *Mass. R.* 249; *Beach vs. Packard*, 10 *Vermont R.* 96; *Ayres vs. Mc Connell ad. etc.*, 15 *Illinois R.* 230; 6 *Greenl.* 364; 1 *Shepl.* 233; 12 *Serg. & Rawle* 131; 1 *Bland Ch. R.* 236; 1 *Rand.* 219; 20 *J. Rep.* 338; 2 *Hamm.* 182; 1 *Har. & Gill* 139; 16 *Conn. Rep.* 383; *Rawle on Covenants for title*, 96 *et seqr.;* 1 *Greenl. Ev. p.* 35, *note 1 and authorities cited;* 2 *Parsons on Cont.* 66; *Eckles & Brown vs. Carter*, 26 *Ala. R.* 565.

In *Greley vs. Grubbs*, ROBERTSON J. in delivering the opinion of the Court of appeals, said: "On the second proposition" (the one involved in our present inquiry)" the authorities are not so satisfactory: and therefore, we have not been so clear, as on the first. The authorities on this subject in England, as well as in the States of this Union, are various and contradictory. But we believe, that the consistent doctrine, and that which accords best with analogy, and with the practice and understanding of mankind, is, that an acknowledgment in a deed, of the receipt of the consideration, is only *prima facie* evidence of payment. The acknowledgment is inserted more for the purpose of showing the actual amount of consideration, than its payment: and it is generally inserted in deeds of conveyance, whether the consideration has been paid, or only agreed to be paid. If the consideration has not been paid, such acknowledgment in a deed would be intended to mean, that the specified amount had been assured by note or otherwise."

" An ordinary receipt is not conclusive of the facts attested by it," (and this is in accordance with the decision of our own Court: See *Humphreys vs. Mc Craw*, 5 *Ark. R.* 61.) " A separate receipt for the price of the land, would, it seems to us, be much stronger evidence that the money had been paid, than

the customary acknowledgment in the deed of conveyance. At all events it should be as cogent. But it may be contradicted: Why not the other? An attention to the principles, upon which parol evidence is admissible to explain or avoid the effect, or the apparent import of a writing, may reconcile many, if not all of the authorities, which seem to be in conflict. One of these principles is, that, as in certain classes of cases the Statute of frauds and perjuries requires writing to vest rights, it would be subversive of the policy of the Statute to allow parol testimony to change the legal import of the written evidence of a right adopted to certify it; therefore, in all such cases, no inferior grade of testimony shall be admitted to supply or control the intrinsic meaning of the writing."

" Another principle, and one more universal than the former in its application, is, that whenever a right is vested, or created, or extinguished, by contract or otherwise, and writing is employed for that purpose, parol testimony is inadmissible to alter or contradict the legal or common sense construction of the instrument; but that any writing, which, neither by contract, the operation of law, nor otherwise, vests, or passes, or extinguishes any right, but is only used as evidence of a *fact*, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts," etc., etc.

" A party is estopped by his deed. He is not to be permitted to contradict it: so far as the deed is intended to pass a right, or to be the exclusive evidence of a contract, it concludes the parties. But the principle goes no farther. A deed is not conclusive evidence of every thing which it may contain. For instance, it is not the only evidence of the date of its execution: nor is its omission of a consideration conclusive evidence that none passed: nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent considerations. And by analogy the acknowledgment in a deed, that the consideration had been received, is not conclusive of the fact. *This is but a fact.* And testing it by the rationality of the rule, which we have laid down, it may be explained or contradicted. It does not, necessarily and undeniably, prove

the fact. It creates no right. It extinguishes none. A release cannot be contradicted or explained by parol, because it extinguishes a pre-existing right. It is only *evidence* of a fact. The payment of the money discharges or extinguishes the debt: a receipt for the payment does not pay the debt: it is only evidence that it has been paid. Not so of a written release. It is not only evidence of the extinguishment, but is the extinguishment itself."

" The acknowledgment of the payment of the consideration in a deed, is a fact not essential to the conveyance: it is immaterial whether the price of the land was paid or not: and the admission of its payment, in the deed, is generally merely formal."

At a later day, in *Hickman & Pearson vs. McCurdy*, the case of *Greley vs. Grubbs*, came under review, and UNDERWOOD J. delivering the opinion of the Court, said:

" It was decided in that case, that the acknowledgment in the deed of the payment of the consideration, was only *prima facie* evidence of the payment, and that it might be contradicted by parol testimony. We are satisfied with the doctrine of that case." * * * * *

In *McCrea vs. Purnet et al.*, COWEN J., in a very elaborate and learned opinion, reviewed all the English and American adjudications, holding doctrines on the point adverse to those expressed in those above cited, and concludes by saying: " That the consideration clause in a deed; that is, the clause acknowledging the receipt of a certain sum of money as the consideration of the conveyance, or transfer, is open to explanation by *parol proof:*" and adds: " It seems, according to the American cases, that the only effect of a consideration clause in a deed is, to *estop* the grantor from alleging that the deed was executed without consideration; and that for every other purpose, it is open to explanation, and may be varied by parol proof."

In *Beach vs. Packard*, the opinion of the Court was delivered by COLLAMER J., who said: " Parol evidence cannot be admitted to vary, contradict, add to, or control a deed, or written contract. The deed of bargain and sale between these parties, had for its object the conveyance of certain land; and the extent of

the land conveyed, the parties thereto, the estate conveyed thereby, and the covenants attending it, could not be affected by *parol proof;* and even that part which relates to the consideration or payment, could not be contradicted or varied by parol, so as in any way to affect the purpose of the deed: that is, its operation as a conveyance. All this is well settled law, and fully sustained by the authorities cited by the defendant's counsel. But the question still remains, when this acknowledgment of payment, under seal, comes collaterally in question, not for any purpose of affecting the conveyance of the lands, or raising any trust or interest therein, does any such rule of estoppel apply?" In this case, the Court below allowed parol proof, to the effect, that the consideration money expressed in the deed as having been paid, had not been, in point of fact;—and the Court in conclusion, said: " This parol proof was, therefore, correctly admitted:" and in support of the opinion cited a portion of the authorities which we have quoted above.

And in *Morse vs. Shattuck*, Richardson Ch. J., said: " It seems to be well settled, as a general rule, that, in a Court of law, where a consideration of money is expressed to have been paid in a deed made for the purpose of conveying land, the law will not permit an averment to the contrary." (Citing the authorities.)

" It has been held in some cases, that, if a particular consideration be expressed in a deed, no other consideration can be averred." (referring to the authorities relied on by the appellants in their brief on this point.)

" In other cases it has been held that any consideration, not inconsistent with that expressed in the deed, may be averred. (quoting the same authorities relied on by appellants on this point.)

" These authorities (continued the learned Judge) may be, probably, all reconciled by adverting to the different purposes for which an attempt has been made to show other considerations, than those expressed in the deeds, and to the different species of considerations which have been expressed in the deeds."

" It is perfectly well settled that a consideration expressed in a deed cannot be disproved for the purpose of defeating the conveyance, unless it be on the ground of fraud. Thus, when a consideration of money is expressed in a deed of bargain and sale, no averment is admissible that no money was paid, in order to show that nothing passed by the deed for want of consideration."

" But for other purposes, the acknowledgment of the receipt of money in a deed, may be contradicted." * * * *, Concluding the opinion by saying: " And we are of opinion in this cause, that although the receipt of the payment of the consideration expressed in a deed, cannot be contradicted for the purpose of defeating the conveyance; yet, for the purpose of ascertaining the damages to which a plaintiff may be entitled for the breach of the covenant of seizin in a deed, the true consideration may be shown, notwithstanding a different consideration is expressed in the deed."

Having settled the legal question, in regard to the competency of parol proof, to establish the real consideration inducing the execution of the deed, by Taylor, as the agent and attorney in fact of the complainants, to Wilson, in conformity with the above authorities, we will now look to the evidence, and determine whether the *prima facie* case made out against the defendant Taylor, has been repelled by the proof, *aliunde*, which he offered at the hearing. Before proceeding to do this, however, we will state, that to remove this presumption, and defeat its effect, evidence clear, conclusive, and of the most irrefragible character has been uniformly held to be required, and that the burden of proof is on the defendant Taylor. See *Ayres vs. Mc-Connel, ubi. sup.*

By reference to the testimony of the defendant's witness, it will be discovered from our statement that there can be no doubt on the subject. The witness Jones states that he " was present when a verbal agreement was negotiated between Creed Taylor (defendant) and John R. White, who was acting as agent for John Wilson, in relation to the prosecution and confirmation of a certain Spanish grant of land, purporting to be made by

the Spanish government, in the year 1793, to one Don Joseph Valliere. The said agreement was negotiated between said White and Taylor in the spring of 1841. John R. White, as the agent of John Wilson, proposed to Creed Taylor (defendant) to prosecute the said grant to final confirmation, at his own expense, for *one half of said grant,* which proposition Creed Taylor (defendant) acceded to, provided it met with the wishes of the heirs of Don Joseph Valliere, whom he promised to see, and make known to them the proposition.

The witness Scull testified that, " some time in the spring of 1841, as my recollection serves me, Creed Taylor (defendant) addressed a letter to me, or my father, to whom I do not now remember, but am certain that a letter was addressed to one of us, stating that he had received information from a man by the name of White, that one John Wilson was extensively engaged in investigating old Spanish claims, and that from the interview had with the said White, that a contract could be effected with Wilson to take charge of, and prosecute a certain Spanish grant, made by the Spanish government, in the year 1793, to Don Joseph Valliere, and from the interview had with White, he believed Wilson would take charge of, and prosecute said grant to final confirmation—pay all expenses and costs attending such prosecution, for one half of the grant,.and requested the witness Scull, to see the heirs of Valliere, and advise them of the proposition, which he states he did, except as to some two or three; and he further states that those who were consulted expressed themselves perfectly agreed as to it.

The witness, White, states, substantially, the facts testified to by Jones; adding that he was a witness to both the deed and agreement—was present when they were executed—knows that no money consideration was paid, or agreed to be paid, for the deed: but that the covenants, in the agreement, on the part of Wilson, was the sole and only consideration, inducing the execution of the deed. He furthermore testifies that he was acting as agent for Wilson in the negotiation with Taylor, mentioned by Jones.

The witness, Lewis, states that he was one of the attesting

84          CASES IN THE SUPREME COURT

Vaugine et al. vs. Taylor et al.          [JULY

witnesses to both the deed and agreement, and knows, from the admissions and conversations of the parties at the time of the execution of those documents, that no money consideration was paid by Wilson to Taylor, and that none was to be paid on account of said deed; that the true consideration inducing the execution of said deed, was the covenants and agreements entered into by said Wilson, as set forth in said contract.

There was no proof militating against this evidence of the defendant, introduced by the complainants. We think, there-fore, that there can be no doubt, but that it is clearly manifest, from this testimony, that the consideration of money named in the deed from Taylor to Wilson, was only nominal; that the true consideration inducing the execution, was the covenants of Wilson, contained in the agreement between himself and Taylor, in respect to the grant of Valliere. Having received no money from Wilson he is responsible for none to the complainants on this score.

But is he liable to the complainants for neglect, for bad faith, or covinous conduct with Wilson? We think not, most clearly; for the reason that, from the testimony of Jones and Scull, he not only did not keep from the complainants what he had done with Wilson, but that he absolutely advised them of the proposition that had been made to him by Wilson, and *obtained* the approval of all, except three, of the parties, who, we may reasonably infer, in the absence of direct proof of the fact, were absent, or did not reside in the vicinity of the other heirs of Valliere, who were really applied to by Scull, on the subject, at the instance of Taylor.

3d. *Proposition.* This has been determined in response to the second inquiry, which we have just considered and disposed of. It is, therefore, wholly unnecessary that we should further pursue the subject in this place.

In the above propositions, all the points, made by the counsel on both sides, have been considered and determined, which materially involve the final result of this cause in this Court. There were several minor points made by the counsel in their argument, and discussed to some extent in their briefs, which,

determined either one way or the other, could not affect the result of this cause, in the views which we have hereinbefore expressed. We do not, therefore, conceive that we are called upon to notice those unimportant points.

On the whole transcript, we are of the opinion that there is no error. The final decree of the Jefferson Circuit Court in Chancery, is, therefore, in all things affirmed, with costs.

Absent, Hon. C. C. Scott.