WHITLOCK *v.* BARHAM & DUNCAN.

Opinion delivered November 23, 1926.

1. EVIDENCE—CONSIDERATION OF DEED.—The only effect of the consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration, but for every other purpose it is open to explanation, and may be varied by parol proof.

2. DEEDS—CONSIDERATION—BURDEN OF PROOF.—Where a deed recited a consideration of $10, grantors seeking to prove a different consideration have the burden of proof.

3. DEEDS—CONSIDERATION—SUFFICIENCY OF EVIDENCE.—Grantors in a deed *held* not to have sustained the burden of proving a different consideration from that expressed in the deed.

4. BAILMENT—DAMAGES.—Where plaintiff permitted defendants to use a drilling outfit until the termination of a replevin suit, defendants, upon such termination, became liable for the market value of a drill stem which was lost by their negligence,

5. JUDGMENT—PARTIES BOUND.—Bailees of a drilling outfit involved in a replevin suit, not being parties to such suit, are not bound by the result.

6. BAILMENT—LIABILITY OF BAILEES.—Where plaintiffs permitted defendants to use a drilling outfit until termination of a pending replevin suit, without agreement on defendants' part to be liable for its usable value, *held* on judgment for such usable value being rendered against plaintiffs as sureties on a delivery bond in such suit, that defendants were not liable for such usable value.

7. JUDGMENT—CONCLUSIVENESS.—That the sureties on a delivery bond in replevin were *held* liable for the loss of a drill stem was not evidence that bailees of such drill stem were likewise liable, and the sureties could recover only by showing that the bailees were responsible for such loss.

8. INTEREST—UNLIQUIDATED DAMAGES.—Where the sureties on a delivery bond in replevin were compelled to pay the value of a lost drill stem, a suit by them against bailees of such drill stem for negligently causing its loss is one for unliquidated damages, though its value had previously been determined in the replevin suit, to which the bailees were not parties, and hence a decree against the bailees does not bear interest from the date of the judgment, but only from the date of rendition of the decree.

Appeal from Saline Chancery Court; *W. R. Duffie,* Chancellor; affirmed.

*W. R. Donham,* for appellant.

*W. A. Utley* and *J. T. Coston,* for appellee.

SMITH, J.    Prior to July 6, 1921, J. Nick Thomas & Company had acquired oil leases covering about 12,000 acres of land in Mississippi County, Arkansas, and, on the date mentioned, entered into a contract with O. R. B. Pace to drill for oil on this land. By the terms of this contract Pace was to furnish, at his own expense, all machinery and necessary tools, and was to pay the labor. This contract required Pace to begin drilling for oil by a designated date, and to continue, without ceasing operations, for a period of more than sixty days until oil or gas was discovered, or a well of a certain depth had been drilled. In consideration of the performance of these obligations by Pace, 8,000 acres of the leases were to become his property, and the contract provided the manner in which the leases would be divided so that

Pace would have 8,000 acres and Thomas & Company would own 4,000 acres.

Pace leased a drilling rig and machinery from the Rose City Drilling Company, and began operations, but he soon became involved, and was unable to meet his obligations. The drilling company brought suit in replevin against Pace to recover possession of the drilling rig, machinery and tools, and Pace consulted and employed Barham & Duncan, a firm of attorneys residing in Blytheville, to represent him, and Barham & Duncan associated with themselves A. F. Barham and J. T. Coston, attorneys residing at Osceola. Pace was without means to employ attorneys, and could only compensate them by conveying an interest in his interest. After investigation, the prospects were sufficiently alluring to enlist the interest and aid of the attorneys, who will be hereinafter referred to as the plaintiffs, inasmuch as they brought this suit. It was first and immediately necessary to execute a delivery bond to retain possession of the drilling outfit, in order to preserve Pace's interest under his contract with Thomas & Company, and these attorneys personally executed the bond. It then developed that Pace owed a board bill of $162 at a Blytheville hotel, and had borrowed $750 from the Citizens' Bank of Osceola to pay labor. The attorneys indorsed a note to the hotel, and one to the bank, covering those items.

It was necessary for Pace to have more money to continue operations, and, with this object in view, he interviewed Gus Fulk, T. P. Murrey and J. F. Whitlock, of Little Rock, and his negotiations with these last-named gentlemen culminated in a contract, dated November 4, 1921, which recited that Pace had drilled a well to the approximate depth of 1,400 feet, but was unable to proceed with the drilling on account of lack of funds. Fulk and his associates will be hereinafter referred to as the defendants, as they are the parties sued in this cause. This contract provided that, in consideration of the sum of $250 paid Pace, he should convey to Fulk and his associates an undivided three-fourths interest in the con-

tract between Pace and Thomas & Company. The contract further recited that Fulk should furnish the expense money for the parties to go to Blytheville and endeavor to sell enough leases to finance the project.

It was further agreed between Fulk and his associates and Pace that Murrey should make Blytheville his headquarters, and should have charge of the sale of leases and of all collections and disbursements. Pace gave to Fulk and his associates an irrevocable power of attorney, conferring this authority. Whitlock, as the geologist, was to be present and supervise the drilling. Pace was to do the drilling. The contract also provided how the money received from the sale of the leases should be disbursed.

As a result of Pace's contract with the plaintiffs and his contract with the defendants, he had conveyed 125 per cent. of his interest in his contract with Thomas & Company and was still obligated to drill the well.

Defendants went to Mississippi County, where the well was located, and there discovered, to their surprise, that Pace had previously conveyed an undivided half interest in the leases to plaintiffs by an instrument which was duly of record.

Some very interesting testimony is given by these amateur oil men touching their dilemma. There were four on one side, and three on the other, with Pace between. According to defendants, they decided to charge their loss to their experience account and abandon the field, for the reason that their contract for three-fourths interest had been rendered ineffective through the previous conveyance by Pace of a half interest to the plaintiffs.

It was agreed that plaintiffs should reconvey three-fourths of their interest to Pace, and the consideration for this agreement is the controlling question of fact in the case. After some negotiations, the parties met in Memphis to execute a contract defining their respective rights and obligations. Of this contract more will be said

later. The parties separated without having evidenced their agreement by any writing signed by them. According to plaintiffs, an agreement was reached whereby they should convey three-fourths of their interest to defendants, the consideration therefor being the assumption by defendants of all liabilities existing or contingent against the plaintiffs, the liabilities assumed covering specifically the notes to the hotel and the bank and the liability of plaintiffs on the delivery bond in the replevin suit. A part of the consideration was that Pace, through the delivery bond, should retain and continue to use the drilling rig, tools, etc., involved in the replevin suit.

According to defendants, they were induced by plaintiffs to proceed with the execution of their contract with Pace in consideration of the conveyance to them from plaintiffs of a three-fourths interest in the half interest which Pace had conveyed to plaintiffs, thus giving defendants a three-fourths interest in all of Pace's interest, as was provided in their original contract with Pace.

A few days after the meeting in Memphis, Coston met a man named Laird, in Jonesboro, who advised him that he had purchased from Pace a half interest in the contract Pace had with Thomas & Company, and, because of this information, plaintiffs executed a deed to defendants, instead of Pace. This deed recites that it was executed "for and in consideration of the sum of $10 to us paid" by defendant.

After the execution and delivery of this deed, the drilling of the well was resumed. Murrey continued in the endeavor to sell leases, but met with only indifferent success. Fulk made advances for promotion purposes, pursuant to his agreement so to do, to the extent of $2,250, and Whitlock supervised the drilling.

Defendants were disappointed in their expectations in regard to the sale of leases, and Fulk declined to advance more money for operating expenses, and drilling operations ceased for the lack of funds with which to continue.

The replevin suit came on for trial, and Pace failed to attend, and a judgment was rendered against him and plaintiffs as sureties on the delivery bond for the usable value of the rig and for $1,550, the value of the drill stem, which had become fastened and stuck in the well.

Plaintiffs were compelled to pay about $3,000 in satisfaction of this judgment, and they thereupon brought this suit to recover the amount thereof, together with the amount of the two notes which they had indorsed for Pace. Defendants answered, and denied any liability, and specifically pleaded the statute of frauds.

The court found that the plaintiffs had permitted defendants to have the use of the drilling rig to carry on the operations commenced by Pace, and that defendants, as bailees of the rig and machinery, negligently permitted the drill stem to become fastened in the well, and, upon this finding, rendered judgment against defendants for the value of the drill stem, which was found to be $1,550. The court declined, however, to render judgment against the defendants for the amount of the judgment against plaintiffs for the usable value of the drilling outfit, and also declined to render judgment against defendants for the amount of the two notes which plaintiffs had indorsed for Pace, for the reason that any agreement on the part of defendants to answer for the debt, default or miscarriage of Pace was within the statute of frauds, and, not being evidenced by any writing signed by the parties sought to be charged, could not be enforced. The court also declined to allow interest on the value of the drill stem. From this decree the defendants have appealed, and the plaintiffs have prosecuted a cross-appeal.

We will not attempt to set out the testimony in detail, as we think no useful purpose would be accomplished by doing so. It is apparent, from what has already been said, that the situations of the parties afforded numerous opportunities for misunderstandings, which were accentuated by the fact that, in the beginning, the

plaintiffs and the defendants dealt with each other on terms of amity and confidence. The venture was one in which all parties would have profited largely, had oil or gas been discovered, and in which all would lose if the venture failed.

Defendants say that the attempt of plaintiffs to hold them responsible for the debts of Pace and for the liability incurred by plaintiffs as sureties on the delivery bond is, in effect, an attempt to reform the deed to them from plaintiffs, and that this relief can be granted only upon testimony that is clear and decisive. Plaintiffs reply by saying that they are not seeking to reform this deed, but are seeking only to show that the consideration expressed, which was $10 paid plaintiffs, was not the real consideration for this instrument, but that the consideration was in fact the assumption by defendants of all obligations or liabilities which plaintiffs had incurred through their relations with Pace.

Plaintiffs are correct in their contention concerning the law governing this question. In the case of *J. H. McGill Lumber Co.* v. *Lane-White Lumber Co.*, 90 Ark. 246, 119 S. W. 822, it was said: "This court, in *Vaugine* v. *Taylor* (18 Ark. 65) quoted with approval the following statement of the law on the subject found in the opinion of Cowen, J., in *McCrea* v. *Purmort*, 16 Wend. 400: 'It seems, according to the American cases, that the only effect of a consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration, and that, for every other purpose, it is open to explanation, and may be varied by parol proof.' "

The burden is, however, upon the plaintiffs to show that the consideration expressed in the deed to defendants was not the true consideration. It is clear that plaintiffs were under the apprehension that defendants were relieving them of all the obligations they had assumed; but it is not so clear that defendants had so agreed.

It will be remembered that the conveyance from plaintiffs to defendants did not divest plaintiffs of their entire interest in the project. On the contrary, they retained and did not convey a one-eighth interest in the leases which would have been assigned Pace had the venture proved successful. It was to the interest of all parties that Pace should continue operations, otherwise all would lose. When the parties met in Memphis to reduce their agreements to writing, Coston, for the plaintiffs, prepared certain memoranda, and Fulk performed a similar service for the defendants, but the contract was never reduced to writing satisfactory to all parties, and no contract was ever signed. The memoranda prepared by Coston concerning the contract which the parties were to make sustain the contention of plaintiff, but those prepared by Fulk sustain the contentions of the defendants.

Plaintiffs say that, if the testimony is in equal poise between themselves and the defendants, the scales tip in their favor through the testimony of the cashier of the bank holding the note of Pace which plaintiffs had indorsed. This officer testified that he spoke to Murrey more than once about payment of this note, and that Murrey asked indulgence of time, and promised to pay the note. Murrey admits having more than one conversation with the bank cashier about payment of the note, but, according to his testimony—and it is sustained by the Fulk memoranda—the Pace obligations were to be paid out of the proceeds of the sales of leases belonging to Pace, but there were not enough sales to finance the drilling operations, and there was never money on hand to pay the bank. The money realized from the sales of leases, with the exception of a few items of expense, all went into drilling operations. Under the memoranda prepared by Fulk it was agreed that, from the sales of leases, Murrey, as the financial agent of defendants, should discharge the outstanding obligations of Pace to the extent of $1,500 before anything should be paid Fulk to reimburse him for his advances, but, as we have

said, the funds out of which this was to be done were never provided.

We conclude therefore that plaintiffs have not met the burden of proof which the law imposes upon them, of showing that the consideration of their deed to defendants was the assumption of payment by defendants of the existing liabilities of plaintiffs through their relations with Pace.

It does not follow, however, because we so hold, that defendants should not be held liable for the value of the drill stem. The testimony shows that one of the agreements reached by the parties was that defendants should be allowed to use the drilling outfit until the termination of the replevin suit, and that they did so use it, and, while using it, permitted the drill stem to become stuck in the well and to so remain until it "froze" there, as the witnesses expressed it, meaning thereby that it became set in a way that it could not, after freezing, be removed. Defendants were bailees of the drilling outfit, and the testimony on the part of the plaintiffs sustains the finding made by the court below, that the drill stem was allowed to freeze through the negligence of the defendants. The testimony shows that, when Fulk ceased to make advances, and Murrey failed to sell enough leases to provide funds to continue operations, defendants abandoned the enterprise, and left the drilling outfit unprotected.

Pace was not sufficiently concerned about the replevin suit to attend the trial. The plaintiffs were therefore without a witness or a defense in that suit, and judgment was rendered against them as sureties on the delivery bond for the usable value of the drilling rig and machinery and the market value of the drill stem which was left stuck in the well.

Defendants were not parties to the replevin suit, and are therefore not bound by its result. They are not liable for the discharge of the judgment against plaintiffs for the usable value of the rig, because the testimony does not establish an agreement on their part to assume

it; and, for the same reason, they are not liable for the payment of the notes to the bank and the hotel, indorsed by plaintiffs; but they are liable for the drill stem, because, while it was in their possession, they negligently permitted its loss.

The court below held defendants were liable for the loss of the drill stem, but refused to charge them with the interest on the value thereof which plaintiffs had paid. Plaintiffs say they should have judgment for interest on the sum they were required to pay as the value of the drill stem from the date of the judgment against them in the replevin suit.

As we have said, defendants were not parties to the replevin suit, and are not bound by the adjudications there made. It was necessary therefore, for the plaintiffs to recover in the present suit, to show that defendants were answerable to them for the return of the drill rig stem and had failed to discharge this duty, and it was essential also for plaintiffs to show the value of any part thereof which had been negligently lost or destroyed. The value of the drill stem, as found by the jury in the replevin suit, was not conclusive of that question in the court below. It was necessary for the court below to find this value, and, while the court found the same valuation, the demand was nevertheless based upon one for unliquidated damages.

The fact that plaintiffs had been held liable for the loss of the drill stem was not even evidence that defendants were also liable, and plaintiffs could recover only by showing that defendants were responsible for this loss. The liability was one which plaintiffs were required to establish, and the amount of the liability could be determined only after a trial. *Coburn* v. *Muskegon Booming Co.,* 72 Mich. 134, 40 N. W. 198.

In volume 17 C. J., chapter "Damages," page 822, it is said that "an award of interest, or, more accurately, of damages for the detention of compensation, is not, according to the weight of authority, a matter of right

in actions of tort for unliquidated damages, but is discretionary with the jury or with the court, where the trial is to the court, except in certain well-defined classes of cases, wherein the recovery is measured by the value or difference in value of the property destroyed or injured, and plaintiff is regarded as entitled, as a matter of law, to interest upon the amount found, if entitled to a recovery." And at § 146 of the same chapter, page 824, it is said: "In other jurisdictions, in cases of wrongs resulting in depreciation or destruction of personalty, an allowance of interest as such is a matter of discretion, and, according to the weight of authority, is, where the amount of the loss is definitely ascertainable, allowable as of right, and by that name." Among other cases cited in support of the text last quoted are the cases of *Hooten* v. *State,* 119 Ark. 334, 178 S. W. 310, and *St. Louis, I. M. & So. Ry. Co.* v. *State,* 119 Ark. 334, 178 S. W. 310, and *St. Louis, I. M. & So. R. Co.* v. *Biggs,* 50 Ark. 169, 6 S. W. 724.

The instant case is unlike that of *Rogers* v. *Atkinson,* 152 Ark. 168, 237 S. W. 679, where the jury had failed to compute and include interest in the verdict, and, upon appeal, we modified the judgment of the court below by computing and adding the interest. That was a suit on a note, and it was an undisputed fact that, if the plaintiff was entitled to a verdict, he was entitled to interest as in the case of a liquidated demand, and we held therefore that the plaintiff was entitled to have the judgment modified so as to include interest.

The instant case is more like that of *McDonough* v. *Williams,* 86 Ark. 600, 112 S. W. 164, which was an action for deceit in the sale of corporate stock, in which case it was held that the plaintiff should have judgment only for the amount assessed by the jury, which did not include interest.

We decline therefore to modify the decree of the court below by adding interest to the value of the drill stem from the date of the judgment against plaintiffs in

the replevin suit, as plaintiff insist we should do. However, the decree here appealed from will and does bear interest from the date of its rendition.

Upon a consideration of the whole case we find no error in the decree of the court below, and it is therefore affirmed both upon the direct appeal and the cross-appeal.