HAYES *v.* SANGER.

4-9450                                    239 S. W. 2d 22

Opinion delivered April 9, 1951.

Rehearing denied May 28, 1951.

*George E. Steel, E. K. Edwards* and *Keith & Clegg,* for appellant.

*J. G. Sain, Robert Steel* and *Arnold & Arnold,* for appellee.

GRIFFIN SMITH, Chief Justice. Mrs. Mary Harriett Hayes died in June, 1947. She devised certain realty to appellant, to whom she had been married since 1925. *Prima facie* Mrs. Hayes had title, subject to life interests, through conveyances executed by Libbie and Laura Sanger December 12, 1945. Libbie and Laura were sisters of Blanch Withrow. A brother, Will Sanger, died in 1944. Several months after signing the deeds the Sanger sisters requested that appellant—in whose possession the documents were known to be—return them. Hayes evaded the direct issue by sending copies; and then, for the first time, it was ascertained that the papers Libbie and Laura had signed were deeds. Libbie died in February, 1949, at the age of 79, but in 1947 the sisters took steps through the execution of a will and quitclaim deeds to undo what Laura contended in this proceeding

was a fraudulent imposition. Kathleen White is Mrs. Withrow's daughter, and was therefore Mrs. Hayes' sister. They were substituted by Laura and Libbie as beneficiaries in lieu of the niece whose husband is alleged to have deceived them.

The chancellor found that the degree of imposition exerted upon Laura and Libbie amounted to fraud and directed that the deeds procured by appellant in 1945 be cancelled. The briefs refer to city lots in Nashville, Ark., and to nearby rural property—all having a value of $27,500. The questioned conveyances include lands in Texas worth $10,000.

Appellant undertook to show that in presenting deeds to the Sanger sisters he was attempting to carry into effect wishes they had expressed in favor of their niece—Hayes' wife—who was their favorite. The documents, by the clearest of terms, were not to take effect during the life of either grantor, hence the result, said Hayes, would be the same as a will. However, Hayes strenuously denied that wills were intended, asserting that the sisters were not deceived in any respect. Hayes thinks the changed attitude came when their niece predeceased them and they then concluded that their sister, Mrs. Withrow, and their other niece, Mrs. White, ought to be provided for.

The chancellor attached significance to the fact that when appellant went to the Sanger home with prepared deeds he not only took a notary public, but had two witnesses to sit in on the transaction and sign the two documents.

Laura Sanger testified that neither she nor Libbie knew very much about business. For this reason their affairs were handled by their brother Will until his death. For a short time thereafter Attorney Sam Rodgers advised them when occasion required, but Libbie (who was described by the witness as "the one who always wanted to save") felt that they should permit Hayes to act for them. This proposal first came from Hayes, who at one time had suggested that Libbie adopt him. On one occasion Hayes borrowed (but repaid)

$2,500.  They made him a gift of jewelry worth $2,500. There was testimony that Mrs. Withrow gave Mrs. Hayes a home in Little Rock.  Hayes did not live at Nashville, but traveled a great deal.

In explaining the extent of their business incompetence, Laura testified to their unfamiliarity with methods and forms; even their taxes had been paid by Will.  Mrs. Withrow's husband was dead, and in 1945 Hayes was the only male member of the family.  The sisters had talked with Hayes about Mary and had told him they wanted to leave something to her, but hadn't said how much.  They believed Hayes wanted to help them, and thought everything "would go straight along."

In describing how the deeds were signed the witness said that Hayes came to the house and brought the prepared documents.  With him were the notary public and two other men.  Hayes was only told that "they" wanted to leave something to Mary.  He had previously advised them against employing a lawyer, explaining that the expense was unnecessary.  When appellant came with the three men he took the papers from an overcoat pocket, handed them to Libbie, and said he had "something for us to sign."  They understood that two witnesses were essential to the validity of a will, so when the men who accompanied Hayes signed as witnesses they supposed everything was as had been indicated and that "something" was being willed to Mary.  No mention was made of a deed—then or at any previous time.

After the papers had been signed Hayes remarked that he had to do a little more work on them: they were not finished.  In explaining why she did not notice the printed title "Warranty Deed," the witness demonstrated how the top, containing the caption, was folded back.  She also said that she did not have her glasses, did not try to read the papers and didn't ask that they be read to her, but signed in entire reliance upon Hayes. Some time later Libbie and Laura began speculating on what they had done, realizing how careless they had been, and telephoned Hayes to return the papers.  Instead, he sent copies.  Hayes testified that he sent photostatic

copies, but typed copies were in the hands of appellees and they contained slight variations from the originals.

Dr. W. A. Hale, one of the witnesses to the deeds, testified that none of the papers was read to the Sanger sisters and nothing was said about a deed. Because of some circumstance suggesting to him that something was to be added to one of the papers, Dr. Hale wrote, ''Witness to signature.'' He verified discussions regarding another paper—a notarized direction to W. B. Worthen Company, Bankers, in which Libbie asked that her savings deposit be treated as a joint account with Mary Hayes.

Mrs. Hayes died from cancer of the breast. Testimony is conflicting regarding the time a pathological condition was noticed. Hayes insisted that the fact was not ascertained until ten days after the deeds were executed. But Mrs. Withrow testified that she discussed the symptoms with Mrs. Hayes six months before the period in question.

Dave McKay, an attorney of Magnolia, testified that Hayes approached him in 1944 or 1945 and asked if an instrument could be drawn that would be as effective as a will, yet allow the party to retain possession of the property. The attorney gave Hayes temporary use of a deed he (McKay) had prepared for a client. It was later returned. This was prior to the time Mrs. Hayes' illness required hospitalization.

Alvin Gibson, a citizen of Nashville and a co-witness to the deeds, testified that Hayes requested that he get Dr. Hale and Hunter Hughes, explaining that they were wanted to witness some papers that were to be signed. Gibson took Hayes and the other two in his car and they went to the Sanger house. Hayes did not read the papers to Libbie or Laura before or after they were signed, but picked up the documents and left with them. In respect of defendant's exhibit No. 1—Laura's deed to 738 acres in Bowie county, Texas—the witness testified that the deed was blank when signed. He subscribed as a witness to Laura's signature and not to the deed. Hayes explained [presumptively to Dr. Hale, Hughes, and Gibson]

that the deed would be filled in at a later date. This witness then said: ''We signed papers crowded up like that (apparently indicating); then (pointing to the deeds) there are some strike-over letters in there that don't look right; and property is mentioned that is not in the other papers they had.'' No one asked the Sanger sisters regarding their understanding of what was being done.

The notary public handed the papers to Hayes. This was admitted by Hughes, who said that while his memory was somewhat vague respecting some of the details, his impression was that when the four men reached the Sanger home ''Miss Laura came out first, and quite a little bit later Miss Libbie came. She was old and physically incapacitated. I stood in the corner while they came in. The papers were not read to either of the sisters [while this witness was there], nor did they read them.'' Hayes paid the notary public for his services.

On cross-examination Hughes admitted that in conversations with attorneys for Hayes he had told them that when the papers were signed he informed Miss Laura and Miss Libbie that they were deeds; but after thinking the matter over he doubted that this was done. His final position was one of uncertainty. Although Hughes, as notary public, had attested the acknowledgment of many deeds, ''this was the first time anyone had thought it necessary to have witnesses present.''

In explaining reasons for the decree Chancellor Will Steel wrote a lengthy opinion. The primary inquiry was whether a relationship of trust and confidence existed between Hayes and the Sanger sisters, for [said the Judge] ''Relief in equity will always be afforded against transactions in which influence has been acquired and abused [and] where confidence has been reposed and betrayed.'' *Young* v. *Barde,* 194 Ark. 416, 108 S. W. 2d 495. The expression is taken from a quotation by Mr. Justice BUTLER who wrote the Young-Barde opinion; but in declaring the law applicable to the controversy there the Court said that under settled law involving mere gifts a duty rests upon the donee to establish by clear and convincing testimony that the transaction was free and voluntary.

While in the case at bar the questioned deeds did not convey directly to appellant, the trial court believed that with or without knowledge—or, let us say, a substantial suspicion—that his wife was ill, Hayes had through a process of ingratiation won the confidence of his wife's elderly aunts to such an extent that they did not question his business proposals.

The weakest link in the chain of evidence is Laura's admission that she and Libbie did not mention what property should be included in the wills. The natural inference would be that this was a detail left to Hayes' discretion and that the intent was to acquiesce in what he did in that respect, and in the circumstances here there must have been a willingness to include everything of value. But even so, the grantors knew that a will could be revoked or destroyed while the party executing it had the mental capacity to act; and if in fact the two women were erroneously persuaded to sign the documents under a belief that wills were being made, then even a mistaken belief by Hayes that he had sufficiently informed his *in-laws* concerning the documents would not defeat cancellation if in fact gifts in revocable form were intended.

The deeds recited ten dollars and other valuable considerations "to me in hand paid" and it was sought to show that the money did not pass. We have held that where the purpose is to defeat a deed by showing that there was no consideration estoppel may be invoked. The principle was quoted with approval by Mr. Justice FRANK G. SMITH in *Whitlock* v. *Barham & Duncan,* 172 Ark. 198, 288 S. W. 4, where it was said that "The only effect of a consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration, [but] for every other purpose it is open to explanation, and may be varied by parol proof."

There was no contention at trial that the deeds were responsive to any consideration other than love and affection; but, conceding that testimony was not admissible in contradiction of the recitals, still there is no rule of law or equity denying to an alleged grantor an opportunity to show that the volition of a reputed grantor was

lacking and that fraudulent conduct by one in a position of confidence procured the naked signature.

The Chancellor treated Hayes as the agent of his wife "whom [the Sanger sisters] wanted to help when *they* were gone." Significant, also, was the fact that the deeds were not filed for recording purposes for more than a year. *Levy* v. *Meyere*, 208 Ark. 389, 186 S. W. 2d 427. The cited case is not entirely in point, for there the mother who sought cancellation alleged that when the deeds were executed it was agreed that they would not be recorded. Three days after the promise relating to recordation was disregarded, Mrs. Levy sued for cancellation.

In the case at bar the Sanger sisters undertook to have the deeds returned. Hayes testified that he sent photostatic copies in response to a telephone call from Laura. In one explanation he said the copies were mailed, but later he asserted that he *knew* he brought them in person, but did not remember delivery. The evidence does not support Hayes' contention that photostatic copies were made.

In mentioning the fact that new wills and deeds were made by Laura and Libbie when they discovered the erroneous conduct Hayes is alleged to have motivated, the Chancellor thought it significant that the deeds were recorded during the lifetime of Hayes' wife, "therefore," says the opinion, "Hayes was put on notice of the steps these old women were taking, and I think that if any move was to be made it was his, and not theirs."

Whether Hayes persuaded the Sanger sisters they did not need a lawyer for general purposes, or whether the idea was one of economy originating with Libbie— the answer is not controlling. The evidence clearly supports a finding that Hayes, an experienced man of business, had sufficient doubt in respect of the design he had in mind to utilize two men in addition to the notary public; and there is convincing testimony that the documents were placed before the grantors without explanation—a practice frowned upon in *Luther* v. *Bonner*, 203 Ark. 848, 159 S. W. 2d 454, where a confidential relationship exists.

We are not persuaded that the rule applied in *Blackburn* v. *Nichols,* 149 Ark. 669 (text not printed), 234 S. W. 495, can be applied in a manner substantially helpful to appellant. It is true that, after discovering that deeds were executed, Libbie and Laura did not immediately initiate legal action. A circumstance in appellant's favor is that most of the property was owned by Libbie who was dead when the cause was heard. This, however, does not clear the record of facts and circumstances convincingly showing a design by Hayes to procure irrevocable grants without disclosing to his wife's aunts that deeds were being made.

Affirmed.